**UNITED STATES of America,**

v.

**Louis TAYLOR, Defendant.**

United States District Court
S. D. New York.

Sept. 13, 1954.

J. Edward Lumbard, U. S. Atty., New York City, for the United States, Richard Owen, Asst. U. S. Atty., New York City, of counsel.

Vine H. Smith, Brooklyn, N. Y., for defendant.

WEINFELD, District Judge.

The issue presented by this motion to reduce a sentence is whether the Boggs Act,[1] amending the penalty provisions of the narcotics laws, is retrospective or prospective as to first offenders.

The defendant was convicted upon a two-count indictment charging (1) conspiracy to violate the narcotics laws and (2) the sale of narcotics in violation of Sections 173 and 174 of Title 21 U.S.C.A. The offenses were committed from January 1951 to March 1951; the trial was had in February 1952, and in March 1952, the defendant was sentenced as a first offender to a term of five years on the conspiracy count and ten years on the substantive count to run concurrently. At the time the offenses were committed the statute[2] authorized a maximum penalty of ten years in the case of a first offender. Defendant now contends that the sentence imposed on the substantive count must be reduced as excessive because Congress, after the offenses were committed, but prior to trial and imposition of sentence, enacted the Boggs Act which authorized a maximum penalty for first offenders of five years.[3]

Prior to the Boggs Act the penalty provisions for narcotics violations were contained in various sections of the United States Code. Section 2(c) of the Narcotic Drugs Import and Export Act,[4] 21 U.S.C.A. § 174, authorized a ten year maximum for first offenders. Sections 200–200b of Title 21 U.S.C.[5] and Sections 2557(b) (5), (6), and (7) of the Internal Revenue Code[6] gave the Court discretionary power to sentence second offenders to maximum terms of ten years and third or subsequent offenders to terms of twenty years. All these sections were affected by the Boggs Act. The sentencing provisions for first, second and subsequent offenders were included in a single section which was brought about in the following manner:

"That section 2(c) of the Narcotic Drugs Import and Export Act, as amended (U.S.C., title 21, sec. 174), is amended to read as follows: '[A first offender] shall be fined not more than $2,000 and imprisoned not less than two or more than five years. For a second offense, the offender shall be fined not more than $2,000 and imprisoned not less than five or more than ten years. For a third or subsequent offense, the offender shall be fined not more than $2,000 and imprisoned not less than ten or more than twenty years. Up-

---

1. 65 Stat. 767, 21 U.S.C.A. § 174.

2. 21 U.S.C.A. § 174, Narcotic Drugs Import and Export Act, approved May 26, 1922, 42 Stat. 596.

3. Effective November 2, 1951.

4. 42 Stat. 596.

5. 50 Stat. 627.

6. 53 Stat. 274.

**922**

on conviction for a second or subsequent offense, the imposition or execution of sentence shall not be suspended and probation shall not be granted.' "

Sections 2, 3, and 4 amend various sections of the Internal Revenue Code to conform the penalties (relating principally to marijuana convictions) to the amended 2(c) of the Narcotics Act. Section 5 states that Section 2(f) of the Narcotic Drugs Import and Export Act, Sections 200–200b of Title 21 U.S.C., and Sections 2557(b) (5), (6), and (7) of the Internal Revenue Code "are hereby repealed". Section 6 contains the saving clause.

Defendant urges that neither that clause nor the general saving statute [7] vitiates the principle that where a general statute is amended so as to lessen the punishment, a defendant is entitled to the benefit of the new act although the offense was committed prior thereto. The nub of his position is that while these saving provisions may effectively continue repealed statutes insofar as offenses committed prior to repeal are concerned,[8] they are inapplicable to amendments. The Boggs Act, so the defendant contends, makes a clear distinction between certain specific provisions of the narcotics laws which were repealed and others which were amended and as to the latter its saving clause is inapplicable because it refers to "repealed" sections but does not mention "amendments." Accordingly, he argues that since Section 2(c), reducing the penalty in the instance of first offenders, was amended rather than repealed, no authority was preserved to act under the law as it stood prior to amendment.

 █ cannot agree. It is well settled that absent a contrary Congressional intent an amendment operating as a substitute for an earlier statute falls within the purview of the general saving statute.[9] I find no such contrary intention here. While the legislative history and debates furnish little direct information on the subject, one thing is crystal-clear—that the primary Congressional purpose was not to ameliorate the penalty provisions of the narcotics laws, but, on the contrary, to strengthen them. Thus, the opening sentence of the Senate Report [10] states:

"The purpose of the bill is to make more stringent and more uniform the penalties which would be imposed upon persons violating the Federal narcotic and marihuana laws."

So determined was Congress that the penalty provisions would be rigidly applied, particularly in view of the alarming increase in drug addiction amongst the youthful, that it curtailed judicial discretion by denying power to suspend the imposition or execution of sentence or to grant probation with respect to second and third offenders.

 In view of the mandatory minimum terms of imprisonment in the instance of recidivists any attempt to impose them for violations committed prior to the effective date of the Boggs Act would run afoul of the constitutional prohibition against ex post facto laws [11] —and the presumption is that Congress

7. 1 U.S.C.A. § 109.

8. Hertz v. Woodman, 218 U.S. 205, 30 S. Ct. 621, 54 L.Ed. 1001; Great Northern R. Co. v. United States, 208 U.S. 452, 28 S.Ct. 313, 52 L.Ed. 567; United States v. Kirby, 2 Cir., 176 F.2d 101; United States v. Marachowsky, 7 Cir., 213 F.2d 235; Lovely v. United States, 4 Cir., 175 F.2d 312.

9. Lowe v. United States Smelting, Refining & Mining Co., 9 Cir., 175 F.2d 486; National Labor Relations Board v. National Garment Co., 8 Cir., 166 F.2d 233; National Labor Relations Board v. Mylan-Sparta Co., 6 Cir., 166 F.2d 485. See also, Morehead v. Hunter, 10 Cir., 198 F.2d 52.

10. S.R. 1051, United States Code Congressional and Administrative Service, 82nd Cong., 1st Sess. 1951, p. 2602.

11. Lindsey v. State of Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182.

did not intend to enact unconstitutional legislation.[12]

Accordingly, defendant's position must rest on the proposition that Congress in the case of first offenders intended the new act to be retroactive but in the case of recidivists, prospective—a dichotomy of legislation not very likely in the light of the avowed purpose to make more stringent the terms of imprisonment for violators of the narcotics and marijuana laws. In recasting these laws Congress not only intended to increase certain penalty provisions, but also to make uniform the sentences applicable to various grades of offenders. To effect this purpose Section 174 of Title 21 U.S.C.A. was used in the instance of narcotic offenses and Section 2557(b)(1) of the Internal Revenue Code was availed of to provide the same penalty for marijuana offenders.[13]

Accordingly, old Section 174 of Title 21 U.S.C.,[14] which made reference only to the punishment for first offenders, was retained and amended to provide the new penalty of imprisonment of from two to five years. Sections 200–200b of Title 21 U.S.C.[15] which contained the second and third offender provisions, were repealed and the imprisonment terms for such offenders were tacked on to Section 174 as amended with the result that the punishment for all offenders, first, second, and subsequent, are now contained in one section. Thus, the use of the words "amended" and "repealed" upon which defendant relies to establish a Congressional intent to distinguish between first and subsequent offenses, while ingenious, is more apparent than real. The Boggs Act in effect substituted a new statute for the old one as surely as if Congress had stated that the Narcotic Drugs Import and Export Act was repealed and an entirely new act substituted therefor. The Committee Reports make no distinction between the changes effected by repeal and those effected by amendment.[16] Had Congress so intended it could readily have made available as to those guilty of offenses committed prior to the effective date of the Boggs Act the benefit of the reduced penalty. But the statute indicates no such purpose. Neither the statute nor its legislative history manifests any implication of Congressional will to exclude the then-existing sentencing provision of Section 174 of Title 21 U.S.C. from the scope of Section 6 of the Boggs Act and the general saving statute.[17] Accordingly, I hold that the Court was authorized to sentence the defendant on the substantive count, in accordance with the statute in force at the time the offense was committed.

The motion is denied.

Settle order on notice.

---

12. United States v. Delaware & Hudson Co., 213 U.S. 366, 407–408, 29 S.Ct. 527, 53 L.Ed. 836.

13. See S.R. 1051, United States Code Congressional and Administrative Service, Vol. 2, 82nd Cong., 1st Sess. 1951, p. 2603.

14. Section 2(c) of the Narcotic Drugs Import and Export Act.

15. 50 Stat. 627.

16. See Committee on Ways and Means, H. R. No. 635, 82nd Cong., 1st Sess., June 21st, 1951; Committee on Finance, S.R. No. 1051, 82nd Cong., 1st Sess., October 19th, 1951.

17. Great Northern R. Co. v. United States, 208 U.S. 452, 465, 28 S.Ct. 313, 52 L.Ed. 567; De La Rama S.S. Co. v. United States, 344 U.S. 386, 73 S.Ct. 381, 97 L.Ed. 422; United States v. Carter, 5 Cir., 171 F.2d 530.