**In the Matter of P. H., a minor girl,
Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1538.**

Supreme Court of Alaska.

Dec. 29, 1972.

---

Edward J. Reasor, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Norman C. Gorsuch, Deputy Atty. Gen., Juneau, Stephen G. Dunning, Asst. Dist. Atty., Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

## OPINION

ERWIN, Justice.

 In this appeal [1] we are asked to de-

---

1. We hold that an order of the children's court waiving jurisdiction over a petition of delinquency is an appealable "final judgment entered by the superior court" within the meaning of Supreme Ct.R. 6 because it terminates further consideration in the Children's Court and transfers the case to the Superior Court. Graham v. Ridge, 107 Ariz. 387, 489 P.2d 24 (1971) ; In re Doe I, 50 Haw. 537, 444 P.2d 459 (1968) ; Templeton v. State, 202 Kan. 89, 447 P.2d 158, 161 (1968). *Cf.* In re E. M. D., 490 P.2d 658, 661 (Alaska 1971) ; R. Child. Pro. 29(a) ; *Contra* Commonwealth v. Croft, 445 Pa. 579, 285 A.2d 118, 120 (1971).

termine the validity of an order of the juvenile court waiving jurisdiction over the appellant, thereby empowering the state to prosecute her as an adult.[2] We have concluded that sufficient evidence was presented below to justify the finding that appellant was not amenable to treatment as a child, and therefore have upheld the waiver of the children's court.

On April 1, 1971, appellant[3] was arraigned before the master of the family court in Anchorage, Alaska, pursuant to a petition of delinquency which alleged violations of AS 11.15.270 (conspiracy to kidnap), AS 11.15.260 (kidnapping), AS 11.15.220 (assault with a dangerous weapon), and AS 11.15.230 (assault and battery).

Pursuant to a motion by the state, a waiver hearing was held before the family court on April 14, 1971. Both the victim[4] of the alleged criminal acts and the intake officer of the children's court testified at the hearing. The victim testified that she first met appellant in February of 1970, that a homosexual relationship developed while the two were living with appellant's mother, that the relationship continued in several apartments at a later time, and that the relationship had terminated several weeks prior to the occurrence of the alleged criminal acts on August 12–13, 1970.

During the late evening hours of August 12, 1970, appellant approached the victim in an Anchorage tavern, became angry when the victim refused to talk, and forced her outside and into a car with the help of three other persons. The five persons then drove to an apartment where they were met by three other individuals. She was held captive in the apartment for four to five hours during which time she was the victim of physical torture and sadism.

The victim described a threatened injection of a narcotic overdose, a forced disrobing, numerous beatings in which appellant participated, the "psychedelic" painting of her body, the extinguishing of matches, an incense stick and a cigarette on her back and chest areas, an unsuccessful attempt to "brand" her with a heated coat hanger, the singeing of her eyebrows with a match, the tearing of her hair with a paint scraper, the insetting of several sewing needles in her hands, feet and ear lobes, and the forced insertions into her vaginal canal of the neck of a champagne bottle and a broom handle.

Seven photographs admitted into evidence over appellant's objection, depict the numerous wounds suffered by the victim. The victim acknowledged that appellant had struck her the least number of times, but testified that soon after the torture began appellant told her that if she "came back [appellant] could stop it." The victim escaped from her kidnapper-assailants when, as they were returning her to the car, she managed to flee to a nearby apartment from which she was taken to a hospital.

Upon conclusion of the state's case,[5] the court found, in accordance with the requirements for waiver in AS 47.10.060(a) and Children's Rule 3(f), that there was probable cause to believe that appellant had committed the alleged criminal acts and that she was not amenable to the treatment available for children. A written waiver order and statement in support were entered June 1, 1971.

 In attacking the validity of the waiver order, appellant raises three ques-

---

2. A grand jury indictment was returned, but trial was stayed pending this appeal.

3. Appellant is the oldest of six children supported by her non-working mother through welfare and child support payments which together total $500 per month.

4. The victim, then 23 years of age, was wanted in California for parole violation and at the time of the hearing, she was being held for extradition. She admitted that she has a juvenile record and one adult felony conviction in California, as well as five felony convictions in Alaska, four for passing forged instruments and one for larceny in a building. She also admitted working as a prostitute in Anchorage.

5. Appellant chose not to present any evidence.

tions, namely: (1) Did the children's court err in admitting hearsay testimony?; (2) Did the court err in admitting photographs of the victim taken soon after the assault?; and (3) Was sufficient evidence presented to the children's court to permit a finding of nonamenability? Appellant additionally alleges error in the denial of several motions for release from detention [6] and complains of a denial of her constitutional right to be speedily charged.[7]

## CHILDREN'S COURT JURISDICTION

We consider first an issue not raised by the parties, the resolution of which is necessary for proper disposition of this case.

AS 47.10.290(6) defines "minor" as "a person under 18 years of age." Appellant was born on October 30, 1952. The delinquent acts for which she was charged were alleged to have occurred on or about August 13, 1970, 2½ months prior to her eighteenth birthday. However, the petition of delinquency, which initiated the children's proceedings below, was not filed until April 1, 1971, six months after appellant's eighteenth birthday.

The question for determination is whether jurisdiction of the children's court is dependent upon the age of a child at the time of the alleged delinquent acts or upon his age at the time the proceedings against him were initiated or culminated in trial. Case authority is split as to the proper age referent, the results largely depending upon the wording of the particular statutory provision involved.[8]

AS 47.10.010(a) provides in relevant part:

Proceedings relating to a minor under 18 years of age . . . are governed by this chapter . . . when the minor

(1) violates a law of the state, or an ordinance or regulation of a political subdivision of the state.

■■ For a number of reasons we have determined that the phrase "under 18 years of age" refers to the age of the accused person at the time of the alleged offense.[9] First, as a general rule, the punishment for an offense is governed by the law in effect at the time the offense is committed. More fundamentally, we note the principal precept behind the children's court concept: that a person under eighteen years of age does not have mature judgment and may not fully realize the consequences of his acts, and that therefore he should not generally have to bear the stigma of a criminal conviction for the rest of his life. To allow officials charged with the execution of the law to prosecute a child offender as a

6. Appellant was first arrested and placed in the Anchorage city jail on March 31, 1971. Her detention was twice continued by the master of the children's court for a total period of six days, exemplifying a usurpation of judicial power which we recently condemned in In re G. M. B., 483 P.2d 1006, 1010 (Alaska 1971). Moreover, the record does not disclose any written orders "setting forth the grounds that support such detention or placement" as required by R. Child. Pro. 7(a).

Detention was also continued by the children's court judge for a total period of 38 days. The detention orders were neither based on competent testimony nor accompanied by the required statement of facts. Therefore, they were also invalid. Doe v. State, 487 P.2d 47, 52–53 (Alaska 1971).

7. Cf. Marks v. State, 496 P.2d 66 (Alaska 1972); McKay v. State, 489 P.2d 145, 150–151 (Alaska 1971).

Although the victim was interviewed and photographed by police officers soon after her ordeal, approximately 7½ months elapsed between the alleged criminal acts of appellant and accusation. The state's attorney indicated that the dilatory filing of a delinquency petition was due to successive disappearances of both appellant and the victim. However, no hearing on the motion to dismiss was ever held; nor was evidence introduced at the waiver hearing to show that appellant was at any time unavailable.

8. See Annot., 89 A.L.R.2d 506 (1963).

9. For other cases similarly construing vague jurisdictional grants to juvenile courts see United States v. Fotto, 103 F. Supp. 430 (SDNY 1952); State v. Jones, 220 Tenn. 477, 418 S.W.2d 769 (1966).

criminal merely by deferring action until the child's eighteenth birthday would frustrate this purpose. Finally, serious constitutional issues would arise if the nature of the proceedings against a child offender were to depend on the arbitrary decision of law enforcement officials.

We hold that from the moment a child commits an offense he is exempt from criminal prosecution until the children's court properly waives its jurisdiction.[10]

## THE WAIVER HEARING

Before turning to the issues raised, it is important to consider the nature of the hearing which generated them.

The waiver procedure set out in AS 47.10.060 and Children's Rule 3 provides the means by which the children's court judge determines, prior to adjudicating the delinquency petition, that an accused child is not a suitable subject for the treatment available for child offenders. To justify waiver, the children's court judge must find, on sufficient evidence, that "probable cause is established at the hearing for believing that the child committed the act with which he was charged in the petition and which if committed by an adult would constitute a crime and the child is not amenable to the treatment provided under AS 47.10

Article 1 and under [the Rules of Children's Procedure] . . . . ."[11]

The waiver hearing is a critically important stage in criminal proceedings against a child. At stake is the statutory promise of special rehabilitative treatment in lieu of the harsher sanction of criminal conviction.[12] Because the consequences of waiver are great, "the hearing must measure up to the essentials of due process and fair treatment."[13] The constitutional prerequisites for a valid waiver are reflected in Rule of Children's Procedure 3 which guarantees the child a hearing before the children's court judge after adequate notice thereof, counsel at the hearing who has had access to records and reports relevant to issues before the court, and a statement of reasons accompanying the waiver order.

Having noted their context, we turn to a consideration of the issues raised.

## HEARSAY

The victim's testimony at the waiver hearing contain her remembrance of several statements made by the alleged kidnapper-assailants. Appellant was granted a continuing objection to such testimony on the basis that it was hearsay and, in addition, that it violated her constitutional right to confront the witnesses against her.[14]

---

10. In the only other Alaskan case in this area, State v. Linn, 363 P.2d 361 (Alaska 1961), both the alleged crime and the subsequent charges occurred while the defendant was 16 years of age. We simply decided that the statutory wording "over 16" meant any time after the 16th birthday. We were not presented with facts which required a decision on whether the statutory age applied to the time of the crime or to the time of arrest and charges.

11. R.Child.Pro. 3(f).

12. The list of the substantial statutory benefits flowing from disposition through children's court proceedings includes the following: no criminal conviction or the attendant employment prejudice and loss of civil rights [AS 47.10.080(g)]; minimal publicity concerning the adjudication [AS 47.10.090]; a maximum period of commitment which cannot exceed the child's twentieth birthday [AS 47.10.080

(c)(1)]; and perhaps conceptually most important, a benevolent attitude [AS 47.10.280] dictating specialized rehabilitative treatment [AS 47.10.150–260].

13. Kent v. United States, 383 U.S. 541, 562, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84, 98 (1966). Although the *Kent* decision turned in part upon the language of a District of Columbia statute, the Court's subsequent decision in In re Gault, 387 U.S. 1, 12, 30, 87 S.Ct. 1428, 18 L.Ed. 2d 527, 538, 547–548 (1967), makes it clear that the procedural guarantees enunciated in *Kent* are of constitutional dimension.

14. U.S.Const. Am. VI; Alaska Const. art. 1, § 11. The right of confrontation applies to children's proceedings in which the child is charged with misconduct for which he may be incarcerated. R. L. R. v. State, 487 P.2d 27, 31 (Alaska 1971).

■ The court below correctly assumed that its probable cause determination could not be based upon hearsay testimony.[15] Nevertheless, it overruled appellant's objection, giving as its reason that "this testimony to be offered does not constitute the necessity to accept it as the truth or non-truth . . . ."

■ Hearsay is "[e]vidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated . . . ."[16] At trial the state argued that the testimony regarding statements by third parties was being offered for the non-hearsay purpose of explaining the victim's conduct.

■ We have previously recognized that eyewitnesses to an event should be permitted to testify in a natural manner about what they observed.[17] "This ordinarily includes such background facts as where the witness was, how he happened to be there, and what interrelationship he may have had with other persons present at the event about which the witness testifies."[18]

In McKee v. State, we were invited to rest the decision on an exception to the hearsay rule, but we declined to do so and stated that the basis for admission was the practical principle of testimonial completeness. The statements herein were admissible for they provided background information about the event and the persons involved therein. As such they did not constitute hearsay.

Appellant also claims that the admission of this evidence violated his sixth amendment rights to confrontation of witnesses as made obligatory on the states by the fourteenth amendment.[19]

While it is apparent that the sixth amendment confrontation clause and the evidentiary hearsay rule stem from the same roots,[20] both this court and the United States Supreme Court have declined to equate the two.[21]

The United States Supreme Court has explained the distinction in terms of practical concern for the accuracy of the truth-determining process in criminal trials to assure that the trier of fact had a satisfactory base for evaluating the truth of the out-of-court statement.[22] The court followed a balancing process which reviewed the nature of the evidence, the relationship of other evidence, the opportunity to examine the statement, and its importance to the central issue on trial to determine whether there has been a violation of the confrontation clause.

■ In the case at bar, an examination of the statements in question makes it clear that they do not rise to the level of the deprivation of constitutional rights of confrontation particularly in view of the reason for their admission in evidence. It was not error to admit them on this ground.[23]

15. R. Child. Pro. 3(e) provides in part that "[T]he provisions of these rules concerning . . . admissibility of evidence for the adjudicative phase of child hearings shall be applicable to [a waiver] hearing." R. Child. Pro. 17(a) provides in part that "[h]earsay evidence is not competent to establish the act of delinquency . . . in the adjudicative phase of the hearing unless admissible under a recognized exception to the hearsay rule."

16. Meyst v. East Fifth Ave. Service, Inc., 401 P.2d 430, 437 n. 15 (Alaska 1965), quoting from Uniform Rules of Evidence, R. 63.

17. McKee v. State, 488 P.2d 1039 (Alaska 1971).

18. *Id.* at 1041.

19. Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923, 926 (1965).

20. Dutton v. Evans, 400 U.S. 74, 86, 91 S.Ct. 210, 27 L.Ed.2d 213, 225 (1970).

21. *Id.* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d at 226; Rubey v. City of Fairbanks, 456 P.2d 470, 476–477 (Alaska 1969).

22. *Id.* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed. 2d at 227.

23. Anything inconsistent in Rubey v. City of Fairbanks, 456 P.2d 470, 476–477 (Alaska 1969), is overruled.

844

## PHOTOGRAPHS

Over defense objection, the state was permitted to introduce into evidence seven photographs, four of which depicted the victim's wounds as they appeared at the hospital soon after the alleged assault and three of which depicted those wounds as they appeared several days later. Appellant argues that the admission of the photographs constitutes reversible error.

In Stevens v. State, 443 P.2d 600, 603 (Alaska 1968), cert. denied 393 U.S. 1039, 89 S.Ct. 662, 21 L.Ed.2d 586 (1969), we held that

> a photograph is admissible in evidence in the discretion of the trial judge, as an aid to the court or jury, after it has been shown to be a faithful representation of whatever it purports to depict, provided it is relevant, and provided its evidentiary value is not outweighed by any prejudice it might create. (Footnote omitted.) [24]

Appellant does not claim that the photographs failed to accurately depict the condition of the victim's body soon after the alleged assaults. Nor did appellant contest their relevancy at trial where her sole objection was that the photographs were "highly inflammatory". However, on appeal appellant argues not only that the photographs were unduly prejudicial but also that they were irrelevant and that their admission was, for the latter reason, plain error.

Concerning the relevancy of the photographs, two issues were before the court in the May 14 waiver hearing: whether probable cause existed for believing appellant committed the acts charged and, if so, whether she would be amenable to the treatment provided for delinquent children.[25] As to the probable cause issue, the primary relevance of the photographs is to the fourth allegation of delinquency, assault and battery. However, the victim testified that she had received blows and other assaults from at least four other persons, and that of the assailants, appellant had struck her the least number of times. The victim was unable to identify any marks or scars in the photographs attributable to assaults by appellant. While none of the depicted wounds were shown to have been inflicted by appellant and since most were not attributable to her, appellant argues that the photographs are of questionable relevance in proving an assault and battery by appellant. However, AS 12.15.010 specifies that "all persons concerned in the commission of a crime, whether they directly commit the act constituting the crime or . . . though not present, aid and abet in its commission, shall be prosecuted, tried, and punished as principals."

 Clearly, the photographs are relevant to establish aiding and abetting the commission of the crime. Also, the totality of the injuries suffered by the victim was relevant to the second major issue before the court, appellant's amenability to treatment as a child. The fact that the alleged assault and battery by appellant, itself perhaps relatively minor, was not an individual attack, but was committed in conjunction with multiple beatings and torture by others resulting in massive injuries to the victim, as shown by the photographs, is highly relevant to the amenability issue. The circumstances of the assault and battery, including the total injuries suffered, have relevance for judging the seriousness of the alleged offense and the motives of the juvenile suspect, both factors in the determination of whether a delinquent youth is amenable to treatment as a child.[26] The

24. Accord, Condon v. State, 498 P.2d 276, 281 (Alaska, 1972) ; Sleziak v. State, 454 P.2d 252, 260–261 (Alaska), cert. denied, 396 U.S. 921, 90 S.Ct. 252, 24 L.Ed.2d 202 (1969) ; Maze v. State, 425 P.2d 235, 239–240 (Alaska 1967) ; Watson v. State, 387 P.2d 289, 294 (Alaska 1963) ; McIntyre v. State, 379 P.2d 615, 617–618, 8 A.L.R.3d 1231 (Alaska 1963).

25. AS 47.10.060(a) ; R.Child.Pro. 3(f).

26. AS 47.10.060(d). In judging the seriousness of the alleged offense, the children's court judge may consider not only the type of crime charged but also the circumstances surrounding its commission, the factors leading to delinquency, history of delinquency, and facilities available for rehabilitation.

photographs were therefore relevant to an issue before the court at the waiver hearing.

■ Appellant also argues that the photographs were so inflammatory that any evidentiary value was outweighed by their prejudicial effect.[27] The trial judge himself expressly recognized the danger of undue prejudice.[28] Nor is there anything "unusually gruesome, or repulsive, or horrifying about these photographs which would outweigh their evidentiary value."[29]

The children's court did not abuse its discretion in admitting the photographs.

## FINDING OF NONAMENABILITY

■ The statutory framework for dealing with child offenders contemplates that non-criminal treatment is to be the rule and adult criminal disposition the exception. As a prerequisite to criminal prosecution, the children's court must find not only that the child is properly accused but also that he would not be receptive to the rehabilitative programs available to the court.

■ While the amenability decision rests in the sound discretion of the children's court judge, the latitude afforded him is not unbounded. The proper exercise of that discretion must be predicated not only upon procedural regularity sufficient to satisfy the basic requirements of due process but also on a full inquiry into the amenability issue. To waive children's court jurisdiction without a hearing or opportunity for adversary presentation would be a denial of fair process. To waive such jurisdiction without substantial evidence having been presented that the child is unamenable to juvenile rehabilitation programs is no less so.[30]

■ In making the amenability determination, the legislature has provided in AS 47.10.060(d) that

> the court may consider the seriousness of the offense the minor is alleged to have committed, the minor's history of delinquency, the probable cause of the minor's delinquent behavior, and the facilities available to the division of youth and adult authority for treating the minor.

All four factors need not be resolved against the child to justify waiver. Nor is there value in requiring the children's court to make an arithmetic calculation as to the weight to be given each factor. There must, however, be a thorough exam-

27. In an attempt to demonstrate that the trial judge was swayed by "emotion and bias against appellant which was in part caused by the pictures in question," appellant quotes the following portion of the court's oral decision rendered at the close of the waiver hearing:
 It sounds to me like something out of Kraft Ebbing (phonetic) or perhaps the Marquis de Sade or perhaps out of the seventh book of Marcel Proust's great work entitled "Remembrance of Things Past" . . . . [T]he conduct is so horrible, so bestial and so shocking and so animal-like and so abnormal in every sense of the word and so repulsive, so repulsive and revolting to the ordinary human being . . . . .
 The evident revulsion expressed by the court would seem to be the result of the victim's testimony rather than the photographs.

28. The court stated:
 I think that [defense counsel's] remarks [regarding the danger of preju-

dice], if they pertained to a jury might be true. I hope that I have myself under sufficient control that I'm not about to be inflamed or being inflamed as to my passions of anger and temper and disgust and displeasure or doubt that I suspect that the pictures will not cause any inflammation in the areas mentioned.

29. Sleziak v. State, 454 P.2d 252, 261 (Alaska 1969).

30. Cf. Kent v. United States, 383 U.S. 541, 553, 86 S.Ct. 1045, 16 L.Ed.2d 84, 93 (1966); Powell v. Hocker, 453 F.2d 652, 656 (9th Cir. 1971); Haziel v. United States, 131 U.S.App.D.C. 298, 404 F.2d 1275, 1279 (1968); In re Anonymous, 14 Ariz.App. 466, 484 P.2d 235, 242–244 (1971); H. v. Superior Court of Los Angeles County, 3 Cal.3d 709, 91 Cal. Rptr. 600, 478 P.2d 32, 35–36 (1970); Templeton v. State, 202 Kan. 89, 447 P.2d 158, 163 (1968); In re Mack, 22 Ohio App.2d 201, 260 N.E.2d 619 (1970).

ination of the child, his background and alternative strategies of rehabilitation short of adult criminal treatment. Lacking such an examination, the children's court has no evidentiary basis for the decision.

The investigation cannot be a mere ritual. To insure that it is not, and to provide a basis for review, Rule of Children's Procedure 3(h) requires that the waiver order

> be accompanied by written findings of fact clearly demonstrating that:
>
> (1) The court made full inquiry into the allegations of the petition,
>
> (2) The question of waiver of children's proceedings and of closing the children's case were given careful consideration by the court, and
>
> (3) All statutory conditions for waiver of child proceedings and closing the case were established.[31]

■ In this case the state in its presentation of evidence and the children's court in its findings of fact relied entirely on the serious nature of the crimes charged and

the short time remaining before appellant's nineteenth birthday to justify waiver.[32] Though the standards for determining amenability to treatment through the children's court lack explicit definition, it is clear from the statute that the court in most cases must go beyond the circumstances surrounding the alleged delinquent acts and the age of the child.[33]

■ The peculiar facts of this case indicating very serious antisocial behavior and the inability to predicate a plan for the defendant during the short time remaining before her nineteenth birthday[34] coupled with the obvious need of treatment as disclosed by the record, are sufficient to justify a waiver to adult jurisdiction. We, however, wish to emphasize that even though the children's court may have independent knowledge concerning children's treatment programs and facilities, it is necessary in future cases to make the existence and evaluation of such programs a part of the waiver proceedings to enable proper review by this court.

31. R. Child. Pro. 3(h) is reflective of the following language from Kent v. United States, 383 U.S. 541, 561, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84, 97 (1966):
> Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not "assume" that there are adequate reasons, nor may it merely assume that "full investigation" has been made . . . . [T]he statement should be sufficient to demonstrate that the statutory requirement of "full investigation" has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review.

32. The court supported its unamenability determination in its written findings as follows:
> That since the subject will become 19 on October 30, 1971, and in view of the nature of the offenses charged, and in view of the short period of time remaining until the subject reaches the age of 19, there would be virtually no, or at

best limited juvenile resources available to restore her to the status of a useful member of society.

33. *See* Kent v. United States, 383 U.S. 541, 553, 86 S.Ct. 1045, 16 L.Ed.2d 84, 93 (1966).

34. AS 47.10.060(d) states that a minor is unamenable to treatment if he cannot be rehabilitated. Under this chapter jurisdiction is permitted over the minor until he reaches 21 years of age. However, AS 47.10.080(b)(1) which establishes the power of the juvenile court to order treatment of delinquents provides that the court can only order commitment to the Department of Health and Social Services until age 19. An additional one year period can be ordered by the court only where the minor has not responded to treatment and where the Department of Health and Social Services petitions the court for an extention of the period of supervision.

This age limitation in AS 47.10.080(b)(1) reflects a 1970 legislative decision intended to reduce the age of majority in a great number of matters concerning minors and is considered controlling over AS 47.10.060(d) which was not similarly changed apparently through oversight.

Appellant has also alleged that she was denied her right to speedy trial asserting that there was a delay of approximately seven and one-half months between the date of the offense and the charge. While we have recognized that there may be reason to dismiss criminal charges because of prejudice suffered by a defendant because of preindictment delay,[35] we have indicated such a decision must be based on a consideration of several factors.

The reason for delay, the prejudice to defendant, and the governmental interest in postponing accusation must be evaluated to assess a claim of violation of due process with respect to events occurring prior to indictment.[36] A review of the record herein makes such a claim difficult to evaluate simply because no attempt was made to establish facts concerning the reasons for delay or its effect on appellant. Thus, we find the record does not substantiate a claim of a denial of due process by virtue of pre-accusation delay.

The decision of the superior court is affirmed.

---

35. Marks v. State, 496 P.2d 66, 68, n.6 (Alaska 1972).

