**James E. DAVENPORT, Appellant,**

**v.**

**Frederick McGINNIS, Commissioner of the Department of Health and Social Services, et al., Appellees.**

**No. 1942.**

Supreme Court of Alaska.

May 31, 1974.

---

OPINION

BOOCHEVER, Justice.

Admitting to having sold marijuana to an undercover agent, plaintiff-appellant James Davenport was adjudged delinquent on August 18, 1970. He was then 18 years old, although the sale preceded his 18th birthday by three months. Davenport was committed to the Department of Health and Welfare (now denominated the Department of Health and Social Services) for an indeterminate period not to extend beyond his 21st birthday. The department's classification committee determined that Davenport should be placed in the federal juvenile facility at Englewood, Colorado. Federal authorities placed him in the facility for young offenders (up to 27 years of age) in Lompoc, California, finding Davenport too "aggressive" and "sophisticated" for the juvenile facility. Davenport complained strenuously about his placement in Lompoc.

The Alaska Legislature reduced the age of maximum juvenile commitment to 19,[1] and Davenport was discharged from Lompoc two weeks after his 19th birthday. Upon his release, Davenport filed this action for damages against the Commissioner of Health and Social Services, the superintendent of McLaughlin Youth Center, and other employees of the department, alleging that he was wrongfully placed in a facility with adults and wrongfully imprisoned past his 19th birthday.

At Davenport's jury trial, the trial judge granted summary judgment for the defendants on the issue of wrongful delay in release,[2] and instructed the jury that the statute requiring separation of juvenile and adult prisoners applied to "minor[s] under eighteen years of age." The jury returned a defense verdict. Davenport now appeals, contending (1) that the trial judge erred in granting partial summary judgment be-

Robert H. Wagstaff, Anchorage, for appellant.

Theodore M. Pease, Jr., Burr, Pease & Kurtz, Anchorage, for appellees.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

1. AS 47.10.080(b) and AS 47.10.100 were amended to reduce the maximum age of release upon indefinite commitment to 19 years. The statutes are set out *infra* at note 3 and note 10.

2. The defendants' additional argument for summary judgment based on a claim of sovereign immunity was never ruled upon.

cause the statutes which reduced the age of majority deprived the juvenile authorities of jurisdiction over him the instant he attained the age of 19, and (2) that the trial judge erroneously instructed the jury concerning the placement of juvenile offenders.

## UNLAWFUL DELAY IN RELEASE

When Davenport committed the act which conferred jurisdiction upon the juvenile court, and when he was sentenced, the applicable statute required that a minor found to be delinquent either be committed to the Department of Health and Social Services for an indeterminate period to end not later than the day the minor became 21 years of age, or be placed on probation for a like period.[3] Shortly after Davenport was committed, the statute reducing the age of release to 19 became effective.[4] Davenport argues that the amended statute mandated his release on the day he attained the age of 19.

The statutes requiring release upon a specified birthday are, in effect, maximum sentencing statutes. The sentence which may be imposed upon a convicted adult is determined as of the time of the final judgment of conviction,[5] or as of the time of commission of the offense.[6] These rules have been applied to juvenile sentencing.[7] We need not choose between the time of commission of the criminal act and the time of final judgment, since both antedated the effective date of the amendment to the sentencing statute. Under either rule of construction, the statute did not retrospectively affect Davenport's sentence. Our refusal to give retrospective effect to the amendment reducing the maximum age of commitment is bolstered by AS 01.10.090, which provides: "No statute is retrospective unless expressly declared therein."[8] We find nothing in the amendatory legislation that indicates an intention that the sentence reduction should operate retrospectively. Nor is this a case where the continued jurisdiction of the department was predicated upon Davenport's remaining a statutory minor; the 19 year age of majority co-existed with the 21 year

---

3. Former AS 47.10.080(b), § 2 ch. 118 SLA 1962, provided in pertinent part:

 If the court finds that the minor is delinquent, it shall make one of the following orders:

 1. The court may order the minor committed to the Department of Health and Welfare for an indeterminate period of time not to extend past a specified date or in any event past the day the minor becomes 21. . . .

 2. The court may order the minor placed on probation, to be supervised by the department, and release him to his parents, guardian, or a suitable person. . . . The probation may be for an indeterminate period of time, not to extend past a specified date and in no event past the day the minor becomes 21. . . .

4. AS 47.10.080(b) presently provides:

 If the court finds that the minor is delinquent, it shall

 (1) order the minor committed to the Department of Health and Social Services for an indeterminate period of time not to extend past a specified date or in any event past the day the minor becomes 19 . . . ; or

 (2) order the minor placed on probation . . . for an indeterminate period of time, not to extend past a specified date and in no event past the day the minor becomes 19. . . .

The amendment became effective September 25, 1970. Davenport was committed to the custody of the department on August 17, 1970.

5. In re Estrada, 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948, 951 (1965).

6. United States v. Taylor, 123 F.Supp. 920, 923 (S.D.N.Y.1954), aff'd mem., 227 F.2d 958 (2d Cir. 1955), cert. denied, 353 U.S. 961, 77 S.Ct. 870, 1 L.Ed.2d 912 (1957); see P. H. v. State, 504 P.2d 837, 841 (Alaska 1972).

7. Commonwealth ex rel. Tancemore v. Myers, 189 Pa.Super. 270, 150 A.2d 180, 181 (1959); Commonwealth ex rel. Lyons v. Day, 177 Pa. Super. 392, 110 A.2d 871, 872–874 (1955). Both cases held that a reduction in maximum commitment for juvenile crime will not be applied retrospectively.

8. See Stephens v. Rogers Constr. Co., 411 P. 2d 205, 208 (Alaska 1966), and Hill v. Moe, 367 P.2d 739, 742 (Alaska 1961), cert. denied, 370 U.S. 916, 82 S.Ct. 1554, 8 L.Ed.2d 498 (1962), where we adhered to the statutory policy against retroactivity.

maximum commitment age from 1962 until 1970.[9]

Davenport argues that the power of the department to hold him is co-extensive with the power of the superior court to exercise continuing jurisdiction in his case. He argues that the amendatory legislation deprived the superior court of such jurisdiction, and that the department was, likewise, deprived of custody.[10] This argument misses the point that once the sentencing court acquires jurisdiction over the individual, only an expressly retroactive statute could defeat its continuing jurisdiction for the duration of the sentence originally imposed. The statutes in force at the time of Davenport's juvenile proceedings conferred jurisdiction upon the juvenile court until Davenport reached age 21.[11]

We hold that the juvenile court and the department had continuing jurisdiction over Davenport until his 21st birthday. Release before that date was within the discretion of the court and the department. Therefore, he was not wronged by incarceration beyond the date upon which he became 19. Accordingly, the superior court properly entered summary judgment in favor of the defendants upon Davenport's claim of excessive incarceration.

## PLACEMENT IN LOMPOC

Davenport claims that the second sentence of AS 47.10.190 prohibited the department and the federal authorities from placing him in Lompoc. The statute states:

> When the court commits a minor to the custody of the department, the department shall arrange to place the juvenile in a detention home, facility or another suitable place which the department designates for that purpose. A juvenile detained in a jail or similar institution at the request of the department shall be held in custody in a room or other place apart and separate from adults.

Davenport claimed that he was protected as a "juvenile" under this statute from placement in Lompoc where he was not separated from young adults. The superior court instructed the jury that: "A juvenile under Alaska Statutes relating to the handling of offenders, is a minor under eighteen years of age." Since Davenport had attained the age of 18 at the time of his commitment the instruction, in effect, directed the jury to find that Davenport's placement was not in violation of the stat-

---

9. AS 25.20.010 enacted in 1959 provides:
 A person is considered to have arrived at majority at the age of 19 years, and thereafter has control of his own actions and business and has all the rights and is subject to all the liabilities of citizens of full age, except as otherwise provided by statute.
 The legislation amending several provisions of the Children's Act was part of an omnibus age-law bill which resolved ambiguities in several codes and generally harmonized all Alaska statutes with the policy of a 19 year age of majority. Judiciary Committee Report on [Committee Substitute for House Bill No.] 406, 1970 H.J.Supp.No.6, 1970 H.J. 586 *post*.

10. AS 47.10.080(f) provides in pertinent part:
 A minor found to be delinquent . . . is a ward of the court as long as he is committed to the department or the department has the power to supervise his actions. The court shall review an order made under (b) . . . of this section annually, and may review the order more frequently to

determine if continued placement . . . is in the best interest of the minor and the public, and to determine if the minor is being treated fairly.
AS 47.10.100(a) provides:
The court retains jurisdiction over the case . . . until [the minor] becomes 19 years of age. . . .
AS 47.10.100(c) provides in pertinent part:
If a minor is adjudicated a delinquent . . . the court may retain jurisdiction over him after his eighteenth birthday for the purpose of supervising his rehabilitation, but the court's jurisdiction over him under this chapter never extends beyond his nineteenth birthday. . . .
AS 47.10.080(f) was unaffected by the 1970 amendments. Provisions virtually identical to the excerpted portions of AS 47.10.100 (a) and (c) existed prior to the 1970 legislation, except that the maximum age of jurisdiction was 21. Art. I, § 11 ch. 145 SLA 1957.

11. *See* discussion, *supra* note 10.

ute requiring juveniles to be held in custody in a place separate from adults. Davenport assigns the giving of the instruction as error.

This appeal was taken without a transcript. Davenport has not attempted to demonstrate that timely objection was made to the subject instruction,[12] but the state has not claimed that the objection was waived. Since the issue was a subject of contention when the defendants moved for a directed verdict, we shall assume that it was raised again during the preparation of instructions to the jury.

We must determine whether AS 47.10.-190 affords one over the age of 18 a right to separation from adult prisoners. Davenport's argument is based on the contention that the term "juvenile" is to be given a different construction from the word "minor". A "minor" is defined in the statute as a person under 18 years of age.[13] The term "juvenile" is not defined, but throughout the act is used interchangeably with "minor". Thus, the first sentence of AS 47.10.190 states:

> When the court commits a *minor* to the custody of the department, the department shall arrange to place the *juvenile* in a detention home, facility or other suitable place which the department designates for that purpose [emphasis added].

And "*juvenile* detention facility" and "*juvenile* detention home" are defined as quarter used for the detention of *minors*.[14] Davenport would have us conclude that "juvenile" means something other than "minor" in the second sentence of AS 47.-10.190, when it clearly means "minor" in the first sentence of the same section. We cannot ignore the apparent intent of the legislature[15] that the two terms are to be construed identically. Since, for the purposes of the statute, a minor is a person under 18 years of age, the trial court correctly instructed that "juvenile" is identically defined.[16]

 The dissent while agreeing with our conclusion that the terms "juvenile" and "minor" as used in AS 47.10.190 are synonymous (and thus defined as one under 18 years of age) nevertheless reads a requirement to incarcerate those over 18 years of age in a facility apart from adult offenders. We do not here state as contended by the dissent that "all juveniles who reach the age of eighteen before their delinquency hearing should be considered in effect unamenable to juvenile treatment . . . ." We merely hold that the department is not limited in its options pertaining to the selection of a suitable facility for those over 18 years of age by the requirement of incarceration apart from adult offenders.

---

12. Civil Rule 51(a) provides in part:
 No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

13. AS 47.10.290(6).

14. AS 47.10.290 defines these terms as follows:
 (4) "juvenile detention facility" means separate quarters within a city jail used for the detention of delinquent minors;
 (5) "juvenile detention home" or "detention home" is a separate establishment, exclusively devoted to the detention of minors on a short-term basis and not a part of an adult jail. . . .

15. We have previously said that we will ignore the plain meaning of an enactment only where that meaning leads to absurd results or defeats the usefulness of the enactment. Sherman v. Holiday Constr. Co., 435 P.2d 16, 19 (Alaska 1967), *quoting from* Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 332–333, 59 S.Ct. 191, 200, 83 L.Ed. 195, 205 (1938).

16. We are not persuaded by cases which define "juvenile" in specific terms construing statutes dissimilar to Alaska's. *See, e. g.,* Fish v. United States, 254 F.Supp. 906, 907 (D.Md.1966) (holding that the "minority" of a juvenile delinquent terminates upon his twenty-first birthday, despite the fact that 18 U.S.C. § 5031 defines a "juvenile" as a person under 18); State v. Smithers, 256 Ind. 512, 269 N.E.2d 874, 878 (1971).

While the particular Alaska statutes involved mandate our decision, we are not unmindful of the general purposes of the juvenile laws:

> The purpose of this chapter is to secure for each minor the care and guidance which is as nearly as possible equivalent to that which should be given him by his parents. The principle is recognized that minors under the jurisdiction of the court are wards of the state, subject to its discipline and entitled to its protection, and that the state may act to safeguard them from neglect or injury and to enforce the legal obligation due to them or from them.[17]

Difficult problems are presented when one who has committed an offense while under 18 years of age is ordered incarcerated at a later age. Great care must be exercised by the Department of Health and Social Services to provide for custody in an appropriate institution [18] geared to the dual constitutional dictates of reformation of the juvenile and protection of the public.[19]

■ On this appeal we have not been confronted with issues pertaining to the suitability of the institution in which Davenport was incarcerated.[20] As to the narrow issue presented to us with reference to the court's definition of the term "juvenile", we find no error.

Because the partial summary judgment was correct and because the verdict for the defendant was rendered upon proper instructions, the judgment of the superior court must be affirmed.

Affirmed.

ERWIN, J., with whom RABINOWITZ, C. J., joins (concurring in part and dissenting in part).

While I approve of the conclusion that there was no unlawful delay in releasing Davenport from the custody of the Department of Health and Social Services, I cannot agree that the Department was under no duty to hold the appellant in an institution for delinquent juveniles rather than permitting his imprisonment in a federal penitentiary. Under our statutes, a juvenile who commits acts which may lead to his confinement but who becomes eighteen years of age before his delinquency hearing has a right to be confined in a place apart from adult criminal offenders.

As the majority reads AS 47.10.190, only minors under the age of eighteen on the date they are committed have a right to be isolated from the potentially malignant influences of adult prisoners. This result is reached by their focus on the texts of AS 47.10.190 and AS 47.10.290(6) to the exclusion of the larger terms and purposes of our juvenile statutes as a whole. Reading these two statutes in isolation, I cannot say that it is incorrect to find that "juvenile" and "minor" in AS 47.10.190 are synonyms. But I strongly disagree with the conclusion that in this common meaning rests a legislative intent that every juvenile who reaches eighteen before his delinquency hearing has no right to be confined in a juvenile institution.

In P. H. v. State, 504 P.2d 837, 841–842 (Alaska 1972), we approved a delinquency hearing held six months after the appellant's eighteenth birthday despite the same statutory definition restricting delinquency

---

17. AS 47.10.280.

18. *See* Note, Juvenile Justice and Pre-adjudication Detention, 1 U.C.L.A.Alaska L.Rev. 154 (1972). Many of the considerations pertaining to pre-adjudication detention apply to eventual placement of the juvenile.

19. Alaska Constitution, art. I, § 12 specifies that: "Penal administration shall be based on the principle of reformation and upon the need for protecting the public."

20. Although no transcript was furnished on this appeal, exhibits introduced by stipulation indicate that while Davenport was detained at McLaughlin Youth Center, he was the subject of 18 Youth Incident Reports indicating misconduct between April 29 and September 28, 1970. Davenport's conduct doubtlessly made the problem of his placement more difficult.

proceedings to persons under eighteen years of age. Juveniles are accorded special, and hopefully more sensitive, treatment in our courts because, by virtue of their immaturity, they are less culpable for their acts and more susceptible to rehabilitation than adult offenders. For these reasons, among others, we held in *P.H.* that the age of the child at the time he commits the acts which bring him within the jurisdiction of the children's court determines whether he is to be treated as a juvenile offender or as an adult criminal.[1] *P.H.* involved questions of juvenile adjudication rather than disposition, but in light of the purposes of our juvenile statutes as a whole I can see no good reason why *P.H.* should not guide our decision here.

Unlike the majority, I can find no reason in the arrangement of our juvenile statutes for a conclusion that the rationale of *P.H.* applies to "minors" in adjudications but not in dispositions. The legislature has not made a judgment that every juvenile who becomes eighteen before he has a delinquency hearing should, as a matter of law, be adjudicated as a juvenile but may be imprisoned as an adult. The fact that a juvenile has committed delinquent acts so close to his eighteenth birthday could be a proper ground for incarcerating him as an adult, but a reading of the juvenile statutes forecloses any conclusion that this reason is embodied in the synonymous use of "minor" and "juvenile" in AS 47.10.190.

Before the children's court can decide whether a child is delinquent, the judge must determine that he is not unamenable to treatment. AS 47.10.060. If he is found to be unamenable to treatment and there is probable cause to believe that he is delinquent, jurisdiction of the children's

court is waived and a criminal prosecution may be initiated. This procedure applies to all minors under the age of eighteen at the time they commit the acts supporting a delinquency petition. Even those who reach eighteen before the waiver hearing is held are assessed for their amenability to rehabilitation. P. H. v. State, 504 P.2d 837, 841–842 (Alaska 1972); R. J. C. v. State, 520 P.2d 806, 807 (Alaska 1974). It would be inconsistent with this manifest design to find, as the majority does, that the synonymous use of "minor" and "juvenile" in AS 47.10.190 embodies an intent that all juveniles who reach the age of eighteen before their delinquency hearing should be considered in effect unamenable to juvenile treatment and thus can be incarcerated as adult criminals. The waiver hearing requires the judge to make this determination in each case.

Looking to the other justification for special juvenile procedures—the lesser culpability of the child, there is no basis for more severe treatment of those juveniles who reach eighteen before their delinquency hearing. Their blameworthiness is measured by their maturity when they commit delinquent acts. There is no reason to punish them for the fortuity of a birthday before their cases can be heard.

Another part of our juvenile statutes lends support to a conclusion that the legislature did not intend that juveniles like appellant Davenport should be held in prisons. AS 47.15.010–47.15.080 declare the Uniform Interstate Compact on Juveniles as the law of this state. Article III defines juveniles to include anyone found delinquent and subject to the jurisdiction of a juvenile court. Article IX then unequivocally provides:

> That, to every extent possible, it shall be the policy of states party to this compact

---

1. Not the least of the benefits of the children's court proceeding are the benevolent attitude and specialized rehabilitative treatment a juvenile is entitled to in confinement. In P. H. v. State, 504 P.2d 837, 842 n. 12, we listed other benefits as (1) no criminal conviction or attendant employment prejudice and loss of civil rights, AS 47.10.080(g); (2)

minimal publicity of the proceedings, AS 47.10.090; and (3) a maximum period of confinement not exceeding the child's twentieth birthday, AS 47.10.080(e). At the time of appellant Davenport's incarceration, the maximum period of confinement continued until a juvenile's twenty-first birthday. § 2 ch. 118 SLA 1962.

that no juvenile or delinquent juvenile shall be placed or detained in a prison, jail or lockup, or detained or transported in association with criminal, vicious or dissolute persons.

Clearly, under this compact, no juvenile, regardless of whether he has reached eighteen while awaiting court proceedings, can be imprisoned. If he is detained, he must be held apart from adult criminals.

To be sure, the compact does not dictate the result in this case because it regulates Alaska's relations with other states, not the federal government with whom appellant Davenport was placed. Even though the compact does not control, it surely stands as an expression of our state's policy on confining juveniles who reach eighteen before their delinquency hearings. Reading the unexceptioned language of the compact together with the majority's construction of AS 47.10.190 would yield an apparent intent of the legislature that juveniles like Davenport who are adjudicated delinquent in Alaska and confined in this state or elsewhere through contract with the federal government may be held in prisons in the company of adult criminals while juveniles who also reach their eighteenth birthday before adjudication and who are found delinquent here but confined in other states or vice versa must be placed apart from adult criminals.

I cannot conceive of any set of circumstances which would lead the legislature to make this distinction. It is my view that the legislature's intentions can be better ascertained by reading AS 47.10.190 and other apposite statutes—AS 47.10.060. AS 47.10.280,[2] and AS 47.15.010 Articles III and IX—as an interrelated and coherent whole. Because there are good reasons here to believe that AS 47.10.190 and AS 47.10.290(6) read in isolation do not fully and accurately embody the legislature's in-

tent, our policy against extending statutory language which expresses that intent does not apply.[3] Accordingly, I would hold as we did in P. H. v. State that for the purpose of determining placement the term "minor" refers to the age of the juvenile at the time he commits the acts resulting in his confinement.

On this reading, the instruction given by the superior court was erroneous because it did not state when the status of "minor" under the detention statute was to be determined. I would set aside the judgment below and remand the case for a new trial on the issue of the defendants' liability for Davenport's confinement in a federal penitentiary.

---

2. AS 47.10.280 declares the broad policy of Alaska's juvenile statutes to be "to secure for each minor the care and guidance which is as nearly as possible equivalent to that which should be given him by his parents."

3. Territory of Alaska v. Five Gallons of Alcohol, 10 Alaska Reports 1, 7–8 (1940); see Aleutian Homes v. Fischer, 418 P.2d 769, 774 (Alaska 1966). *Compare* Alaska Mines and Minerals, Inc. v. Alaska Indus. Bd., 354 P.2d 376, 379 (Alaska 1960).