**Kelly J. ZURFLUH, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4697.**

Supreme Court of Alaska.

Dec. 5, 1980.

---

Phil N. Nash, Kenai, for appellant.

Thomas M. Wardell, Dist. Atty., Kenai, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.*

CONNOR, Justice.

While we find the sentence imposed by the trial court in this case is not excessive, in light of the judge's expressed preference to apply a suspended imposition of sentence with a period of incarceration, and in light of subsequently passed legislation making this possible,[1] we remand this matter to the trial court for reconsideration of the sentence.

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

1. AS 12.55.086(a) provides:
   "When the imposition of sentence is suspended under AS 12.55.085, the court may require, as a special condition of probation, that the defendant serve a definite term of

## I.

In March, 1977, Kelly Zurfluh and two friends broke into a grocery store in Kenai and stole a safe containing $42,732 in cash, checks and coupons. They had first tried to get in with the help of a minor who worked in the store, supposedly in order to get something to eat. After the minor mentioned the safe, Zurfluh and his friends took the minor away from the scene, then returned and completed the burglary.

Zurfluh left the state and spent the money. On his return he discovered that a warrant was out for his arrest and he left again. In October, 1978, he came back and turned himself in. He pled no contest to a charge of burglary not in a dwelling[2] and was sentenced to five years' imprisonment, two of which were suspended. He has appealed the sentence.

Zurfluh argues that the sentence imposed is inconsistent with the court's expressed reasons for imposing it and that, in view of the psychiatric evaluations, it is excessive. He contends that the court misevaluated the psychological evidence and erred in relying on deterrence of others when others with Zurfluh's psychological tendencies are not likely to be deterred. He also claims that a maximum sentence was imposed even though he is clearly not a worst offender, and that adequate psychiatric and vocational programs will not be forthcoming under the sentence imposed.

The state responds that the trial court considered all features of Zurfluh's background and crime, that it weighed the purposes of sentencing carefully, and that the result is not clearly mistaken.

Thorough psychological and neurological testing was performed on Zurfluh. He is "hyperactive" and exhibits "dyslexia" and

continuous or periodic imprisonment, not to exceed the maximum term of imprisonment that could have been imposed."

2. Former AS 11.20.100; the maximum sentence is five years. Burglary not in a dwelling has been reclassified in AS 11.46.310.

"poor impulse control."[3] He appears to have been a minimally brain–damaged child. His minimal organic brain damage, however, is not a neurological problem and his "problems should be handled on their psychological and psychiatric merits."

Zurfluh's argument concerning the court's attitude toward the psychological data is without merit. The court's comments have been misread: Judge Hanson clearly indicated that he recognized that Zurfluh should not have been expected to respond to his earlier incarceration[4] and that this time he would do all he could to ensure that proper psychiatric treatment was provided. We assume that the Division of Corrections will fulfill its responsibilities, in this regard.

As for deterrence of others, there was no claim that Zurfluh was unable to conform his conduct to societal proscriptions: deterrence of borderline criminals is an essential purpose of sentencing. As to Zurfluh's other argument, it is true that maximum sentences should usually be imposed only upon the "worst type of offender," but a court need not find that a person falls into that category in order to treat him as a "particularly difficult type of offender." *Spearman v. State*, 543 P.2d 202, 205 (Alaska 1975). We will consider the entire sentence imposed, including any period of suspension. *Andrews v. State*, 552 P.2d 150, 152 (Alaska 1976). But there is an obvious difference between a maximum sentence with no time suspended and one with part of the time suspended.

Zurfluh, in sum, cannot point to anything in the judge's view of the case that would have led to an excessive sentence. He simply disagrees with the court's conclusion as to how much time should be imposed.

At the time of the burglary, Zurfluh had just reached his nineteenth birthday. While this is his first felony offense, he has a prior juvenile record consisting of a mis-

demeanor conviction and a probation violation. The break–in was a spur–of–the–moment incident, but the large amount of money taken makes this a particularly egregious crime within its category. Zurfluh initially fled the state to spend the proceeds of the burglary and avoid prosecution, although he did later turn himself in voluntarily, indicating an acceptance of responsibility and a desire to put the crime behind him.

The examining psychiatrist's conclusion was that Zurfluh's rather minimal psychological difficulties are amenable to treatment, but that he appears to need close supervision to help him resist his asocial impulses. One psychiatrist noted that Zurfluh "is particularly vulnerable to the negative influence of peers." Pre–sentence reports recommended incarceration for an unspecified period, accompanied by medical and psychiatric treatment followed by probation. The sentence imposed was in keeping with these recommendations and evaluations. By suspending a portion of the sentence imposed and providing that the defendant be given psychiatric treatment while incarcerated, the sentencing judge reflected his faith in Zurfluh's potential for rehabilitation.

While the sentence here is relatively severe, our review of the record leads us to the conclusion that in imposing this sentence the court was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

II.

Imposition of a period of incarceration as a condition of suspended imposition of sentence was a common practice before *State v. Boyne*, 586 P.2d 1250 (Alaska 1978), which stated that the courts did not have the authority to do so. This decision was handed down on December 1, 1978. The

---

**3.** Dyslexia is a reading disorder; hyperactivity and poor impulse control appear to mean what their literal reading suggests.

**4.** Zurfluh served 60 days in jail for a 1976 unauthorized entry conviction. That misde-

meanor offense was his only prior contact with the law. Judge Hanson felt that Zurfluh's psychological problems prevented such a short sentence from having a meaningful reformation impact.

next session of the legislature, which began in January, 1979, enacted Sec. 5, Ch. 32, SLA 1979, codified as AS 12.55.086, and made it effective May 2, 1979. The question for decision is whether that statute may be applied retrospectively to the 153–day period between the *Boyne* decision and the effective date of AS 12.55.086.[5] It was during this period that Kelly Zurfluh was sentenced.

The normal rule about retroactive application of statutes in Alaska is AS 01.10.090:

> "*Retrospective statutes.* No statute is retrospective unless expressly declared therein."

AS 12.55.086 does not expressly provide for retrospective application, but we find here an exception to the general rule against retroactivity. The timing of the legislation and the hearing testimony on the bill[6] indicate this was curative legislation proposed in reaction to the ruling in *Boyne*, which was based on the belief that incarceration as a condition of suspended imposition of sentence was properly a matter for the legislature to decide. *Boyne*, 586 P.2d at 1252.[7] A hearing on the bill was held by the House Judiciary Committee on March 28, 1979. At the hearing, at least one member of the committee stated that this was curative or legalizing legislation. Testimony given by experts pointed out that the procedure had been used commonly throughout the state before the *Boyne* decision and that it was a valuable sentencing alternative.

The general rule of construction of curative legislation is that retroactivity will be ascribed to it more readily than to that which may disadvantageously, though legally, affect past relations and transactions. 2 C. Sands, Sutherland Statutory Construction § 41.04 at 253 (4th ed. 1973). The apparent intent of the legislature as that the benefits of this type of sentencing should be available to trial judges as soon as possible and there is nothing to indicate that the legislature meant to discriminate against people who were sentenced during the 153 days when suspended imposition of sentence with a period of incarceration was unavailable.[8] Based on this reading of legislative intent, we hold that on remand the trial judge may apply AS 12.55.086 when he reconsiders Zurfluh's sentence.[9]

REMANDED.

---

5. This portion of the opinion applies equally to our recent decision, *Mangold v. State*, 613 P.2d 272 (Alaska 1980), in which we allowed retrospective application of the statute without giving our reasons therefor.

6. SB 141.

7. This was reiterated in *Sprague v. State*, 590 P.2d 410, 417 n.21 (Alaska 1979). That opinion was handed down February 2, 1979.

8. This situation should be distinguished from the situation in *Davenport v. McGinnis*, 522 P.2d 1140 (Alaska 1974). There the court refused to apply a sentence reducing amendment retrospectively saying: "We find nothing in the amendatory legislation that indicates an intention that the sentence reduction should operate retrospectively." *Id.* at 1142.

9. In holding in Part I of this opinion that we do not find the original sentence excessive, we are in no way indicating that on reconsideration the trial judge should feel bound by that approval. The judge is free to exercise his discretion within the full range of alternatives provided by the law, including AS 12.55.086.