William M. HELTON, Appellant,

v.

STATE of Alaska, Appellee.

STATE of Alaska, Appellant,

v.

Donald J. BENNETT, Appellee.

Nos. A–2489, A–2715.

Court of Appeals of Alaska.

Aug. 11, 1989.

Kevin F. McCoy, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellant Helton.

Michael J. Stark, Asst. Atty. Gen., Crim. Div. Central Office, and Grace Berg Schaible, Atty. Gen., Juneau, for appellant State of Alaska.

Michael J. Stark, Asst. Atty. Gen., Crim. Div. Central Office, and Grace Berg Schai-

ble, Atty. Gen., Juneau, for appellee State of Alaska.

Donald J. Bennett, Anchorage, pro se.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Under AS 33.20.010, inmates in Alaska's correctional system earn "good-time" credit for complying with institutional rules. Prior to April 9, 1986, the statute entitled prisoners to one day of good-time credit for every three days of time served. On April 9, 1986, it was amended to give sentenced prisoners a good-time deduction of one-third of the term of imprisonment. This appeal presents the question of how the amended good-time provisions should be applied to prisoners who were originally sentenced prior to April 9, 1986, but who were thereafter resentenced. We conclude that all prisoners sentenced or resentenced after April 9, 1986, are entitled to have their entire sentences reduced by one-third.

This consolidated case involves defendants in two separate criminal actions. Donald Bennett was convicted of one count of sexual assault in the first degree and was sentenced to an eight-year presumptive term on January 23, 1985. Bennett appealed his sentence as excessive, but was incarcerated pending his appeal. While Bennett was incarcerated, AS 33.20.010 was amended, changing the manner in which good time is calculated. This court subsequently remanded his case for resentencing. *Bennett v. State*, Memorandum Opinion and Judgment No. 1278 (November 26, 1986). Bennett was resentenced to a term of eight years with two years suspended on April 3, 1987.

Bennett was apparently accorded good-time credit at the rate of one day for every three days served prior to April 9, 1986, and one-third off the portion of his sentence remaining to be served as of April 9, 1986. Bennett filed a complaint for writ of *habeas corpus* on June 9, 1988, seeking good-time credit at the rate of one-third of his entire sentence. On September 30, 1988, Superior Court Judge Brian C. Shortell issued an order granting Bennett's request for relief. The state appeals.

William M. Helton was convicted of one count of robbery in the first degree and sentenced to a seven-year presumptive term on October 16, 1984. Helton appealed his sentence as excessive. On September 11, 1985, this court reversed Helton's sentence and remanded the case to the trial court for additional findings with regard to one of the statutory mitigating factors that had been alleged at sentencing. *See Helton v. State*, Memorandum Opinion and Judgment No. 907 (September 11, 1985). On January 27, 1986, Superior Court Judge James A. Hanson entered an order that again rejected the statutory mitigating factor. Helton again appealed his sentence as excessive. This court reversed Helton's sentence a second time and remanded the case for further consideration by the three-judge sentencing panel. *Helton v. State*, Memorandum Opinion and Judgment No. 1208 (June 25, 1986). The three-judge sentencing panel remanded the case to the superior court for imposition of the presumptive seven-year term. On January 6, 1987, Superior Court Judge S.J. Buckalew, Jr., sentenced Helton to the presumptive seven-year term.

On January 20, 1988, Helton filed a Criminal Rule 35.1 application for post-conviction relief, seeking good-time credit at the rate of one-third of his entire sentence. On February 24, 1988, Superior Court Judge Charles K. Cranston issued an order denying the relief sought by Helton. Helton appeals.

Under former AS 33.20.010, a prisoner who obeyed prison rules was "entitled to a deduction from the term of imprisonment of one day for every three days of good conduct served." Good-time credits were accrued on a daily basis. The amount of good time accrued by a prisoner at any given point equaled one-third of the time the prisoner had actually served, less any credit forfeited for violating institutional rules. Assuming good behavior, a prisoner would be entitled to release upon serving

three-quarters of the term actually imposed.

On April 9, 1986, AS 33.20.010 was amended to provide for release upon completion of two-thirds of the originally imposed sentence:

*Computation of good time.* (a) Except as provided in (b) of this section and notwithstanding AS 12.55.125(f)(3) and 12.55.125(g)(3), a prisoner convicted of an offense against the state or a political subdivision of the state and sentenced to a term of imprisonment that exceeds three days is entitled to a deduction of one-third of the term of imprisonment rounded off to the nearest day if the prisoner follows the rules of the correctional facility in which the prisoner is confined.

(b) A prisoner sentenced to a term of imprisonment of more than one year before April 9, 1986 who was entitled to a deduction of less than one-third of the term of imprisonment is entitled to a deduction of one-third of the portion of the term of imprisonment remaining to be served as of April 9, 1986, unless the Board of Parole determines that, with reasonable probability, the prisoner will not live and remain at liberty without violating any laws.

The Department of Corrections implemented this amendment by changing good-time computation in three ways. First, it increased the amount of good-time credit that could be awarded to newly incarcerated and sentenced prisoners from one-fourth of the prisoner's sentence to one-third. Second, whereas the department previously credited good time on a daily basis, it began to credit the entire good-time award upon imposition of the sentence. Third, for all prisoners incarcerated prior to April 9, 1986, but sentenced sometime thereafter, the department gave credit at the old statutory rate until April 9, 1986, and at the new, more favorable rate for the balance of the term to be served as of April 9.

Helton and Bennett take issue with the third step taken by the department. They argue that, by its express terms, AS 33.20.-010 entitles all persons sentenced to imprisonment after April 9, 1986, to have their entire sentences reduced by one-third if they comply with institutional rules, regardless of whether they were incarcerated prior to or after April 9. Because their original sentences were vacated and they were resentenced after April 9, 1986, Helton and Bennett argue that they were entitled to have their entire sentences reduced by one-third upon resentencing.

In contrast, the state argues that only prisoners who were not incarcerated prior to April 9, 1986, are entitled to have their entire sentences reduced by one-third for good time. According to the state, a prisoner who was incarcerated prior to April 9, 1986, is entitled to the increased deduction on only that part of the sentence remaining to be served as of April 9.

■ The starting point in construing any statute is the language of the statute itself. *See, e.g., Tesoro Alaska Petroleum v. Kenai Pipe Line,* 746 P.2d 896, 904 (Alaska 1987); *Hugo v. Fairbanks,* 658 P.2d 155 (Alaska App.1983). In this case, the plain language of AS 33.20.010 supports Helton's and Bennett's interpretation. Subsection (a) states that prisoners convicted and sentenced to imprisonment are entitled to the one-third deduction, except as provided in subsection (b). Subsection (b) limits the application of the provision in cases in which the prisoner was sentenced to a term of more than one year prior to April 9, 1986. For such prisoners, the one-third deduction applies only to time remaining to be served as of April 9, 1986. As subsection (b) applies only to prisoners sentenced before April 9, 1986, persons incarcerated before April 9, 1986, but sentenced afterwards, are entitled to a one-third deduction from their entire sentences, according to the plain meaning of the statute.

■ Nonetheless, the plain meaning of the statutory language is not necessarily controlling. Alaska has rejected strict adherence to the plain meaning rule in favor of a "sliding scale" approach. *State v. Alex,* 646 P.2d 203, 208–09 n. 4 (Alaska 1982). When a statute's meaning appears clear from its plain language, the party asserting a different meaning bears the

burden of demonstrating contrary legislative intent. *University of Alaska v. Geistauts*, 666 P.2d 424 (Alaska 1983). "[T]he plainer the language, the more convincing contrary legislative history must be." *Alex*, 646 P.2d at 208–09 n. 4. Because the language of AS 33.20.010 is very "plain," the state has a very heavy burden to meet here.

▮ The state first argues that the plain meaning of the statute must be rejected because applying the amended statute to calculate good-time credits for any period of incarceration prior to April 9, 1986, amounts to an impermissible retrospective application of the amendment. The state relies on two statutes limiting the retrospective application of statutes. Alaska Statute 01.10.090 states that "[n]o statute is retrospective unless expressly declared therein." Alaska Statute 01.10.100(a) provides as follows:

*Effect of repeals or amendments.* (a) The repeal or amendment of any law does not release or extinguish any penalty, forfeiture, or liability incurred or right accruing or accrued under such law, unless the repealing or amending act so provides expressly. The law shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of the right, penalty, forfeiture, or liability.

According to the state, prospective application of a penal statute requires that the statute be applied only to acts occurring after the statute's effective date. The state points to Alaska criminal cases that have held that the significant date for determining whether a statute is being retrospectively applied is the date of the offense. *See, e.g., Parker v. State*, 667 P.2d 1272 (Alaska App.1983).

The state further contends that, by virtue of being in custody, persons incarcerated prior to April 9, 1986, but sentenced afterwards were effectively subjected to the "penalty" prescribed under the preamendment version of the good-time statute. The state reasons that applying the amended version of the statute to the full sentence eventually imposed would thus "ex-tinguish [a] penalty," in contravention of AS 01.10.100(a). We disagree.

These arguments are unpersuasive. The cases relied on by the state for the proposition that the date of the offense is controlling involve the retrospective application of statutes whose effect was to deprive the defendant of substantive rights that have been deemed to accrue at the time of the offense. Such retrospective application is clearly prohibited under AS 01.10.100(a), because it extinguishes a "right [already] accruing or accrued" under a former law.

In contrast, application of the amended good-time credit statute to prisoners incarcerated before April 9, 1986, does not extinguish any right accrued prior to the amendment. Instead, the statute confers additional rights, augmenting the benefits previously accrued and received. For purposes of determining retrospectivity, the significant date, by the plain language of the statute itself, is not the date of the offense but rather the date of sentencing.

Moreover, although increasing good-time credit will generally decrease the amount of time a prisoner must actually serve, this does not amount to extinguishing an existing penalty. As penalties are imposed at the time of sentencing, a prisoner sentenced after April 9, 1986, cannot be said to have accrued penalties prior to the effective date of the statute.

Nor can the Department of Corrections' preamendment practice of crediting prisoners on a daily basis at the rate of one day of good time for each three days served logically be deemed a "penalty" within the contemplation of AS 01.10.100(a). For example, the department's crediting procedures amount to a form of anticipatory bookkeeping that takes on significance only when the sentence is eventually imposed. In any event, all good-time credit would necessarily be a benefit, rather than a penalty. We conclude that AS 01.10.100(a) does not bar application of the amended good-time credit statute to time served prior to April 9, 1986.

The state next attempts to support its interpretation by pointing to expressions of

executive intent. First, it quotes the transmittal letter from then-Governor Sheffield to the legislature, explaining the purposes and intent of the bill:

> [F]or those prisoners already incarcerated on the date this bill becomes law, this bill will have the effect of changing the time accounting method from one of accruing good time at a set rate per month to one of a grant of good time in a block, the amount of which is dependent on the time remaining to be served on their sentences.

The state also relies on a letter, written by the drafter of the bill, indicating that prisoners already incarcerated on the effective date of the bill will have their remaining sentences reduced by one-third, and that no prisoner who would not otherwise have been released on April 9, 1986, would be released solely by virtue of the amended statute. Finally, the state points out that the Department of Corrections has incorporated the state's interpretation into its time accounting procedures.

■ Although executive intent may provide a strong indication of legislative intent, it is not controlling. *Wien Air Alaska v. Dep't of Revenue, State of Alaska,* 647 P.2d 1087 (Alaska 1982). In this case, there are countervailing indications that the legislature intended the statute to have its plain meaning.

■ Subsection (b) of the statute was drafted by a member of the House Judiciary Committee as an amendment to the bill proposed by Governor Sheffield. The amendment was prompted by debate on the original bill. During debate on the floor of the House of Representatives, several legislators expressed concern that the new good-time provision might result in the early release of dangerous offenders who were sentenced while the less generous good-time provisions were in effect. The House floor debate on subsection (b) indicates that the legislature believed that a sentencing judge will generally take into account how much good time a prisoner may be expected to receive in making a sentencing decision. Legislators were concerned that prisoners sentenced prior to April 9, 1986, would be released earlier than anticipated by the sentencing judge and might therefore pose an unwarranted risk to the community. (Debate on H.B. 104, 14th Legislature, 1st Sess., April 22, 1985). Subsection (b) enabled the parole board to deny the one-third good-time deduction to a prisoner sentenced before April 9, 1986.

The legislature did not perceive the same danger with regard to prisoners who had not been sentenced before the effective date of the statute. Representative M.M. Miller stated that, in sentencing those prisoners, the judge would take the increased good-time provision under consideration. (Debate on H.B. 104, April 22, 1985). This indicates that the legislature anticipated that prisoners sentenced after the change in the good-time provisions would be given the increased deduction, regardless of whether or not they had been incarcerated prior to the effective date of the legislation.

The state advances additional arguments for its interpretation. It points out that one of the administration's intentions in proposing the bill was to create one uniform time-accounting system for all state prisoners, a goal which is only accomplished if the one-third deduction is applied only to time served after April 9, 1986. The state also argues that prisoners such as Helton should not benefit from the "fortuitousness" of being resentenced after April 9, 1986. These arguments are unpersuasive. Regardless of how the 1986 amendment is implemented, the Department of Corrections will be required to use different accounting procedures for prisoners who were incarcerated and sentenced at different times. Moreover, whenever a legislative amendment takes effect on a fortuitous date, fortuitous results are inevitable.

We conclude that the state has failed to meet its heavy burden of proving that the legislature intended AS 33.20.010 to be interpreted other than as its plain meaning suggests. Therefore, the state's argument that the amended good-time provisions are not applicable to time served prior to April 9, 1986, must be rejected.

The state next argues that even if a prisoner's sentencing date determines whether or not the one-third deduction is applicable, Helton and Bennett should not benefit from this provision. According to the state, a prisoner who appeals a sentence has already been "sentenced." The state reasons that a prisoner who has been sentenced before April 9, 1986, and is later resentenced, should still be treated as having been sentenced before April 9, 1986. In support of its argument, the state cites Alaska Appellate Rule 206(a)(1), which provides that "[a] sentence of imprisonment shall be stayed if an appeal is taken and the defendant is released pending appeal." The state argues that a prisoner who has not been released and must therefore continue to serve time must logically be deemed to have been sentenced.

While the state is correct in asserting that a prisoner who remains incarcerated during the pendency of an appeal has been sentenced, it fails to consider the situation in this case, in which the appeal results in the reversal of the original sentence. According to Black's Law Dictionary, to reverse a sentence is to "overthrow, vacate, set aside, [or] make void ..." that sentence. Once a prisoner's sentence has been reversed, the prisoner is no longer "sentenced," until resentencing takes place. The date of resentencing then becomes the prisoner's sentencing date.[1]

The state additionally argues that treating the date of resentencing as the sentencing date would permit a defendant to benefit from the revised good-time provision by delaying final judgment until April 9, 1986, a result that could not have been intended by the legislature. However, the state's reasoning is flawed to the extent that it assumes a defendant will benefit by bringing frivolous appeals. A defendant's date

of sentencing will not change unless the sentence is reversed and resentencing takes place.

At most, the state establishes that the term "sentenced," as used in AS 33.20.010, is ambiguous, because it could refer to either the prisoner's original date of sentencing or the date of resentencing. Such ambiguities in penal statutes must be narrowly read and construed strictly against the government. *State v. Andrews*, 707 P.2d 900, 907 (Alaska App.1985), *aff'd*, 723 P.2d 85 (Alaska 1986). Accordingly, we conclude that Helton and Bennett were both sentenced after April 9, 1986, and are entitled to have one-third of their entire sentences deducted for good-time credit, assuming that they have complied with institutional rules.

The decision in *State v. Bennett* is AFFIRMED. The decision in *Helton v. State* is REVERSED.

---

1. Alaska Statute 12.55.025(c), providing for credit for time served, suggests that a resentenced prisoner should be considered to begin serving the term of confinement at the time of resentencing. AS 12.55.025(c) provides:

    [W]hen a defendant is sentenced to imprisonment, the term of confinement commences on the date of imposition of sentence. A defendant shall receive credit for time spent in custody pending trial, sentencing, or appeal, if

    the detention was in connection with the offense for which sentence was imposed....

    By providing that a prisoner is entitled to receive credit for time served pending appeal, the statute suggests that a sentence does not continue to run if a sentence appeal is successful and results in reversal. Otherwise, there would be no need to provide for credit for time served pending appeal.