STATE of Alaska, Petitioner,

v.

Scott R. STAFFORD, and Jeffrey
L. Castrey, Respondents.

Nos. A–8872, A–8888.

Court of Appeals of Alaska.

Feb. 3, 2006.

Terisia K. Chleborad, Assistant Attorney
General, Office of Special Prosecutions and
Appeals, Anchorage, and Gregg D. Renkes,
Attorney General, and Scott J. Nordstrand,
Acting Attorney General, Juneau, for the
Petitioner.

Margi A. Mock, Assistant Public Defender,
and Barbara K. Brink, Public Defender, An-
chorage, for Respondent Stafford, and Wil-
liam R. Satterberg Jr., Fairbanks, for Re-
spondent Castrey.

Before: COATS, Chief Judge, and
MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

In 2001, the Alaska legislature toughened
the penalties for driving while under the
influence by requiring sentencing courts to
count all a defendant's prior drunk driving
convictions—no matter how old—in deter-
mining the defendant's mandatory minimum
sentence. Before that time, the law had

counted only convictions within the previous ten years. But in 2004, the legislature concluded that the 2001 law was too harsh. It therefore amended the law again, effective June 30, 2004. Under the 2004 amendment, only an offender's convictions within the previous fifteen years are to be counted in determining the offender's mandatory minimum sentence. This 2004 amendment reflected a policy judgment that individuals who had gone many years without a drunk driving conviction should not be penalized as harshly as offenders with more recent convictions.

The legislature specified that this change should go into effect immediately—that is, as soon as it was signed by the governor. Otherwise, the legislature was silent as to exactly who should benefit from the new law.

This consolidated petition for review raises one question: whether defendants who committed their current drunk driving offense before June 30, 2004, but are sentenced on or after that date, should have their mandatory minimum sentences calculated based on the new, more lenient law.

The parties have addressed this issue as one of "retroactivity." But we conclude that no issue of retroactivity is presented in this case. Rather, for the reasons explained here, we conclude that the date of sentencing is the pertinent date for applying the new law to a particular defendant's case. Thus, the new law applies to all defendants sentenced on or after June 30, 2004.

### Facts and proceedings

Scott R. Stafford was arrested for driving while under the influence on March 21, 2004. He had four prior convictions—three of them within the previous fifteen years and one seventeen years earlier, in 1987. Under the lifetime look-back for prior convictions in effect at the time of his offense, he faced a minimum sentence of 240 days to serve as a fifth offender.[1] Under the new law, because

his first conviction was more than fifteen years old, he faced a mandatory minimum sentence of 120 days as a fourth offender.[2]

Jeffrey L. Castrey was arrested for drunk driving on July 21, 2003. He had been convicted of drunk driving only once before, in 1977—more than twenty-five years earlier. Under the lifetime look-back in effect at the time of his offense, he faced a mandatory minimum sentence of 20 days to serve as a second offender.[3] Under the new law, he would be a first offender, and his mandatory minimum sentence would be 72 hours.[4]

Magistrate David L. Zwink presided over Stafford's sentencing hearing, and District Court Judge Winston S. Burbank over Castrey's. They both ruled in favor of the defendants, concluding that the defendants' mandatory minimum sentences should be determined under the new law because they were still awaiting sentencing on June 30, 2004, when that law went into effect.

We granted the State's petitions for review of these decisions. The State argues that only defendants who *committed their offense* on or after the law's June 30, 2004, effective date are subject to the new law. The respondents argue that they should benefit from the new law because they will be *sentenced* after the law's effective date.

### Why we conclude that the fifteen-year look-back applies to all defendants sentenced on or after June 30, 2004

■ As noted above, the 2004 amendment directed that the new definition of "previously convicted" go into effect "immediately"— as soon as it was signed by the governor.[5] Beyond this, the legislature did not explain what it meant by "immediately."

The State urges us to conclude that a sentencing law that has immediate effect applies only to defendants who committed their offenses on or after the new sentencing law's

---

1. Former AS 28.35.030(b)(1)(E) & AS 28.35.030(r)(4) (prior to 2004 amendment).

2. AS 28.35.030(b)(1)(D) & AS 28.35.030(t)(4).

3. Former AS 28.35.030(b)(1)(B) & AS 28.35.030(r)(4) (prior to 2004 amendment).

4. AS 28.35.030(b)(1)(A) & AS 28.35.030(t)(4).

5. Ch. 126, § 8, SLA 2004; *see also* AS 01.10.070(c) (providing that statutes that have an "immediate effect" date become effective at 12:01 a.m. on the day after the governor signs the bill into law).

effective date. In support of that argument, the State relies heavily on AS 01.05.021. That statute was enacted in 1963 and has never been changed. It reads:

 (a) No fine, forfeiture, or penalty incurred under laws existing *before the time the Alaska Statutes take effect* is affected by repeal of the existing law, but the recovery of the fines and forfeitures and the enforcement of the penalties are effected as if the law repealed had still remained in effect.

 (b) In the case of an offense committed *before the time the Alaska Statutes take effect,* the offender is punished under the law in effect when the offense was committed. (Emphasis added).

The plain language of AS 01.05.021 indicates that it was enacted as a saving statute for repealed laws enacted before Alaska became a state.[6] The State has cited no persuasive authority for interpreting the statute more broadly to mean that a defendant always must be punished under the law in effect at the time of the offense, even if the legislature lessens the penalty for the offense before the defendant is sentenced.

Indeed, the Alaska Supreme Court's decision in *Davenport v. McGinnis*[7] suggests that the State's construction of AS 01.05.021 is wrong. *Davenport* involved a juvenile who was adjudged delinquent and committed to a juvenile facility for an indeterminate period not to extend beyond his twenty-first birthday.[8] After his commitment, the law was amended to reduce the maximum age of release upon indefinite commitment to nineteen years.[9] Davenport was released two weeks after his nineteenth birthday, and he filed an action for damages for wrongful imprisonment.[10] In rejecting that claim, the supreme court refused to give retrospective effect to the amendment reducing Davenport's allowable maximum sentence because Davenport's final judgment preceded the effective date of the amendment, and the legislature had expressed no intent to apply the legislation retrospectively.[11] But before reaching this conclusion, the supreme court noted a split of authority on the question of when an offender should receive the benefit of an ameliorative change in sentencing law. The court stated that "[t]he sentence which may be imposed upon a convicted adult is determined as of the time of the final judgment of conviction, or as of the time of commission of the offense."[12] It added: "We need not choose between the time of commission of the criminal act and the time of final judgment, since both antedated the effective date of the amendment to the sentencing statute."[13]

In referencing this split of authority, the supreme court cited its own earlier decision in *P.H. v. State.*[14] In *P.H.,* the court had declared that "as a general rule, the punishment for an offense is governed by the law in effect at the time the offense is committed."[15] In *Davenport,* the supreme court signaled that it was still an open question whether this general rule applied to an ame-

---

**6.** Under the common law, the repeal of a criminal statute resulted in the abatement of all prosecutions under that law that were not final, unless the legislature included a special provision to save prosecutions under the repealed statute. *Holiday v. United States,* 683 A.2d 61, 66–67 (D.C.App.1996). This was the case even when laws were amended or reenacted, as those revisions effectively repealed the underlying statute. Most states enacted general saving statutes to prevent the inadvertent abatement of criminal prosecutions. These statutes shifted the common-law presumption that repealed statutes would be abated unless the legislature specified otherwise "to one of non-abatement in the absence of contrary legislative direction." *Id.* (quoting Comment, *Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation,* 121 U. Pa. L.Rev. 120, 127 (November 1972)).

**7.** 522 P.2d 1140 (Alaska 1974).

**8.** *Id.* at 1141.

**9.** *Id.* at 1141 & n. 1.

**10.** *Id.* at 1141.

**11.** *Id.* at 1142.

**12.** *Id.* (footnotes omitted).

**13.** *Id.*

**14.** *Id.* at 1142 n. 6. (citing *P.H. v. State,* 504 P.2d 837 (Alaska 1972), *superseded by statute on other grounds as stated in Matter of F.S.,* 586 P.2d 607 (Alaska 1978)).

**15.** 504 P.2d at 841.

liorative change to a sentencing law.[16] In noting this unresolved issue, the court made no mention of AS 01.05.021.

The trend in Alaska cases since *Davenport* has been to acknowledge the general rule stated in *P.H.*, while, in the interests of justice and to comport with the legislature's apparent intent, applying ameliorative sentencing provisions to defendants not yet sentenced. In *Zurfluh v. State*,[17] the supreme court addressed legislation overturning a supreme court decision declaring that courts had no authority to impose incarceration as a condition of suspended imposition of sentence.[18] At the time Zurfluh committed his offense, Alaska courts commonly imposed such sentences—though apparently without statutory authority.[19] But Zurfluh was sentenced during the 153–day period between when the supreme court disallowed such sentences and the legislature formally acted to authorize them.[20] After noting that retrospective application of statutes is generally barred under AS 01.10.090, unless the legislature expressly provides for retrospective effect, the court found an exception in Zurfluh's case.[21] The court explained:

> The general rule of construction of curative legislation is that retroactivity will be ascribed to it more readily than to that which may disadvantageously, though legally, affect past relations and transactions. 2 C. Sands, *Sutherland Statutory Construction* § 41.04 at 253 (4th ed.1973). The apparent intent of the legislature [was] that the benefits of this type of sentencing should be available to trial judges

as soon as possible and there is nothing to indicate that the legislature meant to discriminate against people who were sentenced during the 153 days when suspended imposition of sentence with a period of incarceration was unavailable. Based on this reading of legislative intent, we hold that on remand the trial judge may apply AS 12.55.086 when he reconsiders Zurfluh's sentence.[22]

The supreme court applied this same reasoning in *Mangold v. State*.[23]

We have taken a similar view. In *Sundberg v. State*,[24] the defendant on remand was sentenced to 8 years for his conviction for grand larceny.[25] He argued that this sentence was excessive, pointing out that if he had been convicted under the new criminal code—which became effective about one month after he committed his offense but before he was tried and sentenced[26]—he would have been charged with theft in the second degree, which carried a maximum sentence of only 5 years.[27]

In light of the new criminal code's more lenient treatment of Sundberg's offense, Sundberg's claim caused us some "concern."[28] We noted that "[a] number of cases stand for the proposition that when a defendant is tried and the judgment and sentence entered, subsequent to an amendment to a statute reducing the penalty for the crime for which he is convicted, he should be entitled to the benefit of the lesser penalty rather than the penalty in effect at the time the offense was committed."[29] In particular, we

---

16. 522 P.2d at 1142 & n. 5, n. 6.

17. 620 P.2d 690 (Alaska 1980).

18. *Id.* at 692–93.

19. *Id.* at 693.

20. *Id.*

21. *Id.*

22. *Id.* (footnotes omitted).

23. 613 P.2d 272, 277 (Alaska 1980) (remanding to allow re-sentencing on this ground); *see also Zurfluh,* 620 P.2d at 693 n. 5 (noting that the reasoning in *Zurfluh* applies equally to *Mangold* ).

24. *Sundberg II,* 652 P.2d 113 (Alaska App.1982).

25. *Id.* at 114–15.

26. *Sundberg I,* 636 P.2d 619, 620 (Alaska App. 1981); *Sundberg II,* 652 P.2d at 115 (majority opinion), 117 (Coats, J., dissenting).

27. *Sundberg II,* 652 P.2d at 115.

28. *Id.*

29. *Id.* (citing *In re Estrada,* 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 (1965) and *State v. Tapp,* 26 Utah 2d 392, 490 P.2d 334 (1971)).

cited the following language from *State v. Tapp,*[30] a Utah Supreme Court decision:

There are several considerations which in our mind tend to support our conclusion that where an enactment reducing the penalty for an offense has become effective prior to the conviction, a defendant is entitled to the benefit thereof by having penalty imposed in accordance with the law at the time of the sentence. The first of these is that it is the prerogative of the legislature, expressing the will of the people, to fix the penalties for crimes; and the courts should give effect to the enactment and the effective date thereof as so declared. There are some other fundamental principles engrained in our law which, though not directly controlling on the problem at hand are generally in harmony with the policy considerations which lead to the conclusion we have reached herein. One of these is that to insist on the prior existing harsher penalty is a refusal to accept and keep abreast of the process which has been continuing over the years of ameliorating and modifying the treatment of antisocial behavior by changing the emphasis from vengeance and punishment to treatment and rehabilitation. In the same tenor are time-honored rules of the criminal law generally favorable to one accused of a crime: that in case of doubt or uncertainty as to the degree of the crime, he is entitled to the lesser; and correlated thereto: that as to an alternative between a severe or lenient punishment, he is entitled to the latter.[31]

In *Sundberg,* we found that the legislature had expressly declared that the new criminal code did *not* apply to offenses committed before its effective date and ruled, in con-

formity with *Tapp,* that this legislative intent should control.[32] Nevertheless, we declared that "while not binding on the trial court, the new code does give an indication of current legislative intent and, absent factors in a specific case warranting a harsher sentence, the defendant should be sentenced within the range of sentences provided by the new code, at least to the extent that his conduct corresponds exactly to conduct prohibited by a specific provision, or provisions of the new code."[33] In Sundberg's case, we found that the defendant's repetitive criminality justified the more severe sentence.[34]

*Sundberg* foreshadowed our decision in *Helton v. State.*[35] In *Helton,* we addressed how an amendment to the statute governing good-time credit for incarcerated offenders should be applied to offenders who were sentenced and incarcerated before the change in law but who were subsequently re-sentenced. The re-sentenced defendants sought to have the new law, which increased their good-time credit, applied to their whole sentences, even though their sentences had been partially served before the amendment's effective date.[36] We concluded that the plain language of the amendment provided that all offenders *sentenced* to imprisonment after the amendment's effective date of April 9, 1986, were entitled to the benefits of the new law.[37] The State argued that we should disregard the plain meaning of the statute because retrospective application of the new law would violate the state's general saving statutes.[38] The State argued, as it does here, that the saving statutes, and prior Alaska criminal cases, dictated that the significant date for determining whether a statute is being retrospectively applied is the

---

**30.** 26 Utah 2d 392, 490 P.2d 334.

**31.** *Id.* at 335–36 (footnotes omitted in original).

**32.** *Sundberg II,* 652 P.2d at 116.

**33.** *Id.; see also Whittlesey v. State,* 626 P.2d 1066, 1068 (Alaska 1980) (stating that sentencing provisions in the new criminal code were useful and relevant in the determination of an appropriate sentence even though not binding in Whittlesey's case); *Bolhouse v. State,* 687 P.2d 1166, 1174 (Alaska App.1984) (in applying the *Austin*

rule, finding it appropriate to consider recent amendments to the statutes increasing the presumptive terms).

**34.** *Sundberg II,* 652 P.2d at 116.

**35.** 778 P.2d 1156 (Alaska App.1989).

**36.** *Id.* at 1157.

**37.** *Id.* at 1158.

**38.** *Id.* at 1159.

date of the offense.[39] The State relied in large part on AS 01.10.100(a), which provides:

> The repeal or amendment of a law does not release or extinguish any penalty, forfeiture, or liability incurred or right accruing or accrued under that law, unless the repealing or amending act so provides expressly. The law shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of the right, penalty, forfeiture, or liability.

We rejected the State's argument, reasoning as follows:

> The cases relied on by the state for the proposition that the date of the offense is controlling involve the retrospective application of statutes whose effect was to deprive the defendant of substantive rights that have been deemed to accrue at the time of the offense. Such retrospective application is clearly prohibited under AS 01.10.100(a), because it extinguishes a "right [already] accruing or accrued" under a former law.
>
> In contrast, application of the amended good-time credit statute to prisoners incarcerated before April 9, 1986, does not extinguish any right accrued prior to the amendment. Instead, the statute confers additional rights, augmenting the benefits previously accrued and received. For pur-

poses of determining retrospectivity, the significant date, by the plain language of the statute itself, is not the date of the offense but rather the date of sentencing.

> Moreover, although increasing good-time credit will generally decrease the amount of time a prisoner must actually serve, this does not amount to extinguishing an existing penalty. As penalties are imposed at the time of sentencing, a prisoner sentenced after April 9, 1989, cannot be said to have accrued penalties prior to the effective date of the statute.[40]

For these and other reasons, we held that the State had failed to meet its heavy burden to prove that the legislature intended the amendment to be interpreted other than as its plain meaning suggested.[41]

 In light of the case law we have just discussed, we cannot presume that the legislature, by making the fifteen-year lookback immediately effective but otherwise remaining silent, intended the date of the offense, as opposed to the date of sentencing, to be controlling, as Alaska law has not been settled on this point. Our review of the legislative history and the pertinent cases now persuades us to join those jurisdictions that have held that a defendant should receive the benefit of an ameliorative sentencing law in effect at the time he is sentenced, unless the legislature intended a contrary result.[42] The rule of lenity favors this con-

---

**39.** *Id.* at 1158.

**40.** *Id.* at 1159; *see also Tapp,* 490 P.2d at 336 (concluding that a defendant incurs no penalty until sentencing, and that no penalty is affected in violation of Utah's saving statute if the defendant is subject to the more lenient law in effect at the time of his sentencing).

**41.** *Helton,* 778 P.2d at 1160.

**42.** *See, e.g., Estrada,* 48 Cal.Rptr. 172, 408 P.2d at 953 ("A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law.... [I]t is safe to assume, as the modern rule does, that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently reach the courts."); *Litsey v. District Court,* 193 Colo. 341, 565 P.2d 1343, 1344 (1977) (defendant was entitled to the benefit of change in law reducing look-back for prior convictions in habitual criminal statute

from lifetime to ten years because the defendant's conviction was still on appeal; "where amendatory legislation mitigates penalties for crimes, one convicted of those crimes is entitled to the benefits of that legislation if relief is sought before finality has attached to the conviction"); *State v. Von Geldern,* 64 Haw. 210, 638 P.2d 319, 322–23 (1981) (ameliorative purpose of law giving courts discretion to depart from mandatory minimum sentences and legislature's established pattern of conduct demonstrated intent to apply law to defendants whose appeals were still pending); *Elkins v. State,* 659 N.E.2d 563, 565 (Ind. App.1995) ("when a defendant is found guilty of an offense, he is to be sentenced in accordance with the statute in force at the time the offense was committed unless an amendment to the statute is effective prior to sentencing and the amendment provides for an ameliorative penalty"; defendant was therefore entitled to the benefit of a more lenient habitual offender statute in effect at the time of sentencing); *State v. Wiese,* 201 N.W.2d 734, 737 (Iowa 1972) (ameliorative

clusion. As we have stated: "If a statute establishing a penalty is susceptible of more than one meaning, it should be construed so as to provide the most lenient penalty." [43]

We therefore construe the legislature's decision to make the repeal of the lifetime look-back immediately effective, and to omit any language limiting the new fifteen-year look-back to offenses committed on or after that immediate effective date, as evidence that the legislature wished the new law to be applied as soon and as broadly as possible, without extinguishing penalties imposed under the old sentencing law. Because the new definition of "previously convicted" imposes no burden on a defendant's substantive rights, our ruling does not violate the prohibition against ex post facto laws.[44] We also find no statutory bar to this result. Because penalties do not accrue until sentencing, no penalty is "extinguished" under

AS 01.10.100(a) when a defendant is sentenced under a law that is more lenient than the law in effect at the time he committed his offense.[45] We further find that AS 01.05.021 is not controlling here. That statute, by its plain language, was enacted as a saving statute for repealed laws enacted before Alaska became a state. We have found no persuasive authority to support a broader reading.

The State argues that the rule we adopt today will invite offenders to manipulate the process by delaying sentencing in the hope of benefitting from an ameliorative change in sentencing law—as Castrey apparently did in this case. We note that the State stipulated to the sentencing delay in Castrey's case. In any event, as we observed in *Helton*, "whenever a legislative amendment takes effect on a fortuitous date, fortuitous results are inevitable." [46]

sentencing statute applied to defendants' cases because valid final judgments had not been entered as of the effective date of the new statute); *People v. Schultz*, 435 Mich. 517, 460 N.W.2d 505, 509–10 (1990) (inferring from ameliorative purpose of new sentencing law a legislative intent to apply the new law to cases pending in the trial court and on direct appeal); *State v. Coolidge*, 282 N.W.2d 511, 514 (Minn.1979) ("a statute mitigating punishment is applied to [all] acts committed before its effective date, as long as no final judgment has been reached"); *State v. Wilson*, 279 Mont. 34, 926 P.2d 712, 716 (1996) (defendant is entitled to be sentenced under an ameliorative statute in effect on the date of sentencing if the repealing statute contains no saving clause); *State v. Randolph*, 186 Neb. 297, 183 N.W.2d 225, 228 (1971) ("where a criminal statute is amended by mitigating the punishment, after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature has specifically provided otherwise"); *In re Smigelski*, 30 N.J. 513, 154 A.2d 1, 8 (1959) (when a statute is ameliorative it may be applied retroactively); *People v. Oliver*, 1 N.Y.2d 152, 151 N.Y.S.2d 367, 134 N.E.2d 197, 201 (1956) ("where an ameliorative statute takes the form of a reduction of punishment for a particular crime, the law is settled that the lesser penalty may be meted out in all cases decided after the effective date of the enactment, even though the underlying act may have been committed before that date"); *State v. Pardon*, 272 N.C. 72, 157 S.E.2d 698, 702 (1967) ("When ... the law under which a defendant was convicted is amended pending appeal so as to mitigate the punishment, it is logical to assume that the legislature intended the new punishment, which it now feels fits the

crime, to apply whenever possible."); *State v. Cummings*, 386 N.W.2d 468, 472 (N.D.1986) (defendant was entitled to benefit of statute that went into effect after his offense but before his sentencing; "unless otherwise indicated by the Legislature, an ameliorating amendment to a criminal statute is reflective of the Legislature's determination that the lesser punishment is the appropriate penalty for the offense"); *State v. Macarelli*, 118 R.I. 693, 375 A.2d 944, 947 (1977) (defendants whose cases were not final prior to enactment of ameliorative statute should be accorded the more lenient treatment; to hold otherwise would contravene the "obvious legislative purpose behind the mitigation of the penalty"); *Tapp*, 490 P.2d at 335–36 ("where enactment reducing the penalty for an offense has become effective prior to the conviction, defendant is entitled to the benefit thereof by having penalty imposed in accordance with the law at the time of the sentence"); *see generally* Comment, *Today's Law and Yesterday's crime: Retroactive Application of Ameliorative Criminal Legislation*, 121 U. Pa. L.Rev. 120 (November 1972).

43. *State v. Andrews*, 707 P.2d 900, 907 (Alaska App.1985), *opinion adopted by State v. Andrews*, 723 P.2d 85, 86 (Alaska 1986); *see also Wells v. State*, 706 P.2d 711, 713 (Alaska App.1985) ("It is well established that, in accordance with the rule of lenity, ambiguities in penal statutes must be resolved in favor of the accused.").

44. *See Helton*, 778 P.2d at 1159.

45. *Id.*

46. *Id.* at 1160.

*Conclusion*

The decisions of the district court are AF-FIRMED. Courts determining a defendant's mandatory minimum sentence based on the definition of "previously convicted" in AS 28.35.030 are directed to apply the statute in effect on the date the defendant is sentenced.