Justice Beth Baker, dissenting.
*781 ¶16 We have not addressed the precise question Thomas raises on appeal. Wilson is the closest we have come. Unlike the Court, however, I would conclude that the rule we articulated in Wilson and reaffirmed in Reams and Kebble is not satisfied by the language of HB 133. Consequently, Thomas is entitled to the benefit of the ameliorative changes in the PFO statute.
¶17 Based on ex post facto protections, we have explained that "the law in effect at the time of the commission of the crime controls as to the possible sentence." Finley , 276 Mont. at 147, 915 P.2d at 221 (emphasis in original).[1] Despite this broad statement, however, the Ex Post Facto ***291 Clause has no application when an amendment mitigates a punishment. See State v. Coleman , 185 Mont. 299, 318-19, 605 P.2d 1000, 1012 (1979) (holding that amendments that ameliorate punishment do not violate the Ex Post Facto Clause and suggesting that "the District Court may well have been obligated to apply the [amended] statutes as their changes benefited the accused").[2] See also Rooney v. North Dakota , 196 U.S. 319, 325, 25 S. Ct. 264, 266, 49 L.Ed. 494 (1905) ("[A] statute which mitigates the rigor of the law in force at the time a crime was committed cannot be regarded as ex post facto with reference to that crime.").
¶18 We also have made clear that amendments to sentencing statutes have no application to sentences that already are final when the amendments come into effect. At later revocation proceedings, a defendant may not receive the benefits of an ameliorative statute that came into effect after his original sentencing. See Rose v. McCormick , 253 Mont. 347, 349, 834 P.2d 1377, 1378 (1992) (holding that a prisoner was not entitled to be designated as nondangerous under amendments that came into effect after his sentencing). Nor may a court apply in later proceedings amendments that would enhance the original sentence. State v. Suiste , 261 Mont. 251, 255, 862 P.2d 399, 401-02 (1993).
¶19 In Wilson we considered the Legislature's repeal of the dangerous offender enhancement statute, which occurred after Wilson committed the offense but before he was sentenced. We distinguished Finley because "the dangerous offender statute was repealed and could result in a mitigated punishment." Wilson , 279 Mont. at 39, 926 P.2d at 715. Finding no Montana case law on point, we relied on a California Supreme Court case, In re Estrada , 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 (1966). The Estrada court held that a defendant was entitled to be sentenced according to the ameliorative terms of amendments that became effective after the defendant had committed his underlying offense but before the defendant's trial, conviction, and sentencing. We explained that Estrada 's holding had two foundations. First, the amendments ***292 mitigating sentencing demonstrated legislative intent to decrease a prior punishment that was too severe. Second, the general savings statute for criminal laws did not apply to sentencing statutes. We explained that "[a]lthough Estrada discusses the effects of an amended statute which mitigates punishment, its reasoning also applies to a repealed statute." Wilson , 279 Mont. at 40, 926 P.2d at 716. Like the statutory savings clause in California, Montana's general savings statute, § 1-2-205, MCA, "refers only to the 'law creating a criminal [offense],' and does not apply to sentencing statutes." Wilson , 279 Mont. at 40, 926 P.2d at 716 (quoting *782 § 1-2-205, MCA ). Without an express savings clause in the bill, the Legislature had not indicated clearly whether a defendant should be punished under the old law or the new one. We concluded:
[ (1) ] that when a sentencing statute ... is repealed between the date a defendant commits the underlying offenses and is sentenced; and
(2) where the effect of the repeal lessens or ameliorates the defendant's punishment; and
(3) where the repealer contains no savings clause; the defendant is entitled to be sentenced according to the sentencing statute in effect on the date of sentencing.
Wilson , 279 Mont. at 40, 926 P.2d at 716. Applying this framework, we held that "there was a clear absence of statutory authority to impose the dangerous offender designation." Wilson , 279 Mont. at 41, 926 P.2d at 716.
¶20 We further elaborated on Wilson 's holding in Reams , 284 Mont. at 454-55, 945 P.2d at 56, and in Kebble , ¶ 49. We held in Reams that the State could not resurrect a driving under the influence conviction that should have been expunged automatically years earlier under a now-repealed statute. Reams , 284 Mont. at 455, 945 P.2d at 57. Reams was convicted of driving under the influence in 1975. In 1981, a new amendment came into effect that expunged DUI convictions automatically if five years elapsed without another DUI offense. Relying on Wilson , we explained that the 1981 bill had no savings clause to limit its application; Reams was entitled to the benefits of the amendment. We rejected the State's attempt to consider Reams's expunged DUI conviction for sentence enhancement purposes after the Legislature repealed the statute providing for automatic expungement after five years. Reams , 284 Mont. at 454-57, 945 P.2d at 56-58. Reams did not deal with an ameliorative sentencing statute that changed the defendant's sentence for his 1975 DUI convictions, but the 1981 ***293 amendments did mitigate the consequences of that prior conviction. We explained that defendants are entitled to the benefit of statutes "other than those creating a criminal offense,... absent a clear expression of legislative intent through a savings clause that the former law controls." Reams , 284 Mont. at 454-55, 945 P.2d at 56.
¶21 In Kebble , the defendant claimed that amendments to the outfitting without a license statute that came into effect after his offense but before his conviction eliminated jail time and made his offenses subject to a fine only. Kebble , ¶ 48. Again citing Wilson , we explained "that when a sentencing statute is repealed (or amended) between the date a defendant commits the underlying offense and the date of his sentence, the effect of the repeal (or amendment) is to lessen the defendant's punishment, and the new statute contains no savings clause, the defendant is entitled to be sentenced according to the sentencing statute in effect on the date of sentencing." Kebble , ¶ 49. We ultimately did not reach the issue in Kebble , however, because the Legislature had not repealed or amended the punishment for the offense at issue but simply moved it to another title. Kebble , ¶ 53. Neither Kebble , Reams , nor Wilson is on all fours with the current case, but the principles they articulate are directly applicable to the facts before us.
¶22 The savings statute, § 1-2-205, MCA, preserves the State's authority to prosecute and punish offenders under "any law creating a criminal offense" in effect when an offender committed the act, even if the Legislature repeals that statute before final judgment, "unless the intention to bar such indictment or information and punishment is expressly declared in the repealing act." The general savings statute provides no guidance for determining whether the Legislature intends to have a sentencing court apply the former PFO statutes or ameliorative amendments to those statutes that come into effect between when an offender committed his offenses and his sentencing for those offenses.
¶23 The Court concludes that HB 133's applicability clause supplies the Legislature's clear direction that the bill not apply to offenders who committed their offenses on or before June 30, 2017. Opinion, ¶ 13. I disagree. As the Court observes, legislative intent, in the first instance, is to be ascertained from the plain meaning of the words used. Opinion, ¶ 8; Mont. Vending, Inc. , ¶ 21. It is only when the intent cannot be ascertained *783 from the plain language that we examine legislative history. Mont. Vending, Inc. , ¶ 21.
¶24 Relying on Wilson , we explained in ***294 Reams , 284 Mont. at 454-55, 945 P.2d at 56 :
[A]s to statutes, other than those creating a criminal offense, the criminal defendant is entitled to the benefit of the law in effect when the offense is committed, except to the extent that a later repeal or amendment of the law ameliorates or mitigates a sentence or punishment, and, in that case, the criminal defendant is entitled to the benefit of the later law, absent a clear expression of legislative intent through a savings clause that the former law controls.
In other words, when a statute changes criminal procedure or sentencing between the time of the commission of an offense and the time of sentencing, the defendant is entitled to the protections of the more lenient statute unless the Legislature makes clear through a savings clause that the former law will control. In this case, the first two prongs of the Wilson analysis are met: the Legislature passed an ameliorative sentencing statute that came into effect between the date of Thomas's offense and his sentencing. Thomas argues, however, that HB 133 lacks "a clear expression of legislative intent through a savings clause" that the former PFO definition should continue to control in certain cases after the act's effective date. See Reams , 284 Mont. at 454-55, 945 P.2d at 56.
¶25 A savings clause "excepts from the new legislation matters that would otherwise be governed by the new law and preserves the existing law for such excluded matters." Fisher v. First Citizens Bank , 2000 MT 314, ¶ 19, 302 Mont. 473, 14 P.3d 1228. The Montana Bill Drafting Manual 2016-written and published by the Montana Legislative Services Division "to provide a uniform standard for bill drafting"-distinguishes between effective dates, applicability dates, and savings clauses. It explains that "[a]n effective date should not be included in a bill unless ... there is a reason requiring an early effective date." And it warns: "Do not confuse an applicability date with an effective date." According to the Manual, the applicability date serves the purpose of expressly stating whether a bill applies retrospectively or prospectively, noting that "[t]o apply retroactively, a law must expressly state that fact" under § 1-2-109, MCA. The Manual explains that a savings clause, on the other hand, "preserves rights and duties that already have matured or proceedings already begun."
¶26 These are different but related concepts. The applicability clause explains a bill's prospective or retrospective application, and the savings clause explains what law applies to "duties that already have matured or proceedings [that] already [have] begun" but have not ***295 progressed to final judgment at the time the new bill goes into effect. The Manual explains that "[b]ecause it is presumed that changes in the law are in full force beginning on the effective date of the act, new laws could disrupt transactions already in progress." Though it is possible that one clause could serve as both an applicability clause and a savings clause, it would need the requisite language for each. The Legislature recognized this, for example, when it enacted the Criminal Code of 1973. Section 45-1-103, MCA, includes three distinct subsections:
(1) The provisions of this code apply to any offense defined in this code and committed after January 1, 1974.
(2) Unless otherwise expressly provided or unless the context otherwise requires, the provisions of this title and Title 46 govern the construction of and punishment for any offense defined outside of this code and committed after January 1, 1974, as well as the construction and application of any defense to a prosecution for such an offense.
(3) The provisions of this code do not apply to any offense defined outside of this code and committed before January 1, 1974. Such an offense must be construed and punished according to the provisions of law existing at the time of commission thereof in the same manner as if this code had not been enacted.
This statute shows plainly the Legislature's distinction between an applicability clause *784 and a savings clause.[3]
¶27 HB 133 contains nothing labelled as a savings clause. Section 43 states: "Effective Date. [This act] is effective July 1, 2017." 2017 Mont. Laws. ch. 321, § 43 (brackets in original). Without this effective date clause, the act would have come into effect on October 1, 2017. See § 1-2-201(1), MCA. Section 44 of HB 133 states: "Applicability. [This act] applies to offenses committed after June 30, 2017." 2017 Mont. Laws ch. 321, § 44 (brackets in original). The applicability clause states that the changes in the act apply to offenses committed after June 30, 2017. 2017 Mont. Laws ch. 321, § 44. Because much of the Act amends the elements, definitions, or sentences for specific offenses, this language clearly applies to those amendments. On the other hand, a PFO "designation is not itself a separate crime carrying a separate ***296 sentence, but is a procedural sentence enhancement required by statute." State v. Johnson , 2010 MT 288, ¶ 16, 359 Mont. 15, 245 P.3d 1113 (quoting State v. DeWitt , 2006 MT 302, ¶ 11, 334 Mont. 474, 149 P.3d 549 ). The applicability clause clearly addresses amendments to offenses, but provides no clear explanation for which PFO statutes apply to pending prosecutions. Neither the general savings statute nor the applicability date expresses what PFO statute applies to "proceedings already begun." Just as § 1-2-205, MCA, refers to "criminal offenses," and not to sentencing laws, Wilson , 279 Mont. at 40, 926 P.2d at 716, HB 133 likewise refers to "offenses," 2017 Mont. Laws ch. 321, § 44, and provides little guidance regarding a broadly applicable "procedural sentence enhancement," Johnson , ¶ 16 (quotations omitted).
¶28 The 2017 Legislature could have made clear that the applicability clause acted to preserve the former PFO statute for pending prosecutions. For example, in one measure passed during the same session, the Legislature directly addressed a statute's prospective applicability for sentencing going forward: "Applicability. [This act] applies to offenders who are sentenced on or after [the effective date of this act]." 2017 Mont. Laws ch. 62, § 2 (brackets in original). Alternatively, the Legislature could have used the more comprehensive language in the sample savings clause in the Bill Drafting Manual: "[This act] does not affect rights and duties that matured, penalties that were incurred, or proceedings that were begun before [the effective date of this act]"-which the Legislature used in at least thirteen bills during the 2017 legislative session. See , e.g. , 2017 Mont. Laws ch. 44, § 2, ch. 55, § 9, ch. 102, § 3, ch. 244, § 15, ch. 247, § 9, ch. 320, § 15, ch. 326, § 22, ch. 339, § 11, ch. 346, § 12, ch. 367, § 29, ch. 384, § 37, ch. 389, § 11, ch. 446, § 3. HB 133 does not contain a "clear expression of legislative intent" that the ameliorative effects of the amended PFO statute should not apply to all persons sentenced after the act's effective date. See Reams , 284 Mont. at 454, 945 P.2d at 56.
¶29 Considering the plain language of HB 133's applicability clause, the ameliorative purpose of the PFO amendments, Wilson 's requirement for "a savings clause," and the Montana Legislature's different uses for a savings clause and an applicability clause, I agree with Thomas that the applicability date clause in HB 133 does not equate to a savings clause for the PFO statutes. If HB 133 had done no more than amend the PFO statute, the Legislature's intent may be clearer. But the bill amended many additional sections of the criminal code that define criminal offenses. The general applicability clause, evidencing an intention for those changes in criminal offenses to be ***297 applied prospectively, sheds little light on the application of changes to the PFO definition to pending sentencing proceedings. This is particularly true because HB 133 as introduced repealed the PFO designation in its entirety. Later amendments reinstated the designation without amending the applicability clause. Neither the applicability date nor the savings statute, § 1-2-205, MCA, expressly preserved the 2015 PFO statute for proceedings that already were pending before the effective date. Far from a mere "drafting error," Opinion, ¶ 13, the Legislature's omission of a savings clause affects dramatically *785 the liberty of offenders like Thomas whose sentences were imposed after HB 133 became law. Thomas is entitled to be sentenced under the amended PFO statutes.
¶30 Finally, I am not persuaded by the State's argument that applying the amended PFO statute to Thomas would be unfair and would reward an offender for delaying his sentencing. As the Alaska Court of Appeals explained in reviewing the same issue, "whenever a legislative amendment takes effect on a fortuitous date, fortuitous results are inevitable." State v. Stafford , 129 P.3d 927, 933 (Alaska Ct. App. 2006) (quoting Helton v. State , 778 P.2d 1156, 1160 (Alaska Ct. App. 1989) ). It is not unfair to grant an offender the benefit of an ameliorative sentencing statute that the Legislature has enacted during the pendency of his case. See Coleman , 185 Mont. at 324, 605 P.2d at 1015. I would reverse Thomas's sentence and remand for resentencing under the 2017 PFO statute.
Chief Justice Mike McGrath and Justice James Jeremiah Shea join in the dissenting Opinion of Justice Baker.
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.

We have held that the Ex Post Facto Clause (see U.S. Const. art. I, § 10; Mont. Const. art. II, § 31 ) prohibits the application of enhanced penalties that become effective after the commission of the crime but before sentencing. See , e.g. , Finley , 276 Mont. at 147, 915 P.2d at 221-22 (discussing the Ex Post Facto Clause and holding that a district court may not defer its determination of an offender as dangerous or nondangerous until a later revocation hearing when the statute in place at the time of the crime did not authorize the district court to defer such a determination); State v. Azure , 179 Mont. 281, 282, 587 P.2d 1297, 1298 (1978) (holding that "[a] law which eliminates or delays a defendant's parole eligibility after the criminal offense has been committed is ex post facto as applied to that defendant"); State v. Gone , 179 Mont. 271, 280, 587 P.2d 1291, 1297 (1978) (same).

This quote from Coleman is not binding precedent because the Court did not resolve on this basis the issue before it-whether the Court's prior declaration that Montana's death penalty statute was unconstitutional rendered the penalty unavailable in Coleman's case.

Both the Bill Drafting Manual and other legislative enactments-including some from the same session that enacted HB 133-demonstrate that the Legislature does not use the two clauses interchangeably. See 2017 Mont. Laws ch. 102, §§ 3-4 and ch. 326, §§ 22, 25.